

U.S. District Court
For the District of Columbia
U.S. Courthouse
333 Constitution Ave, NW
Washington, DC 20001

# RECEIVED

AUG 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

David Kissi,       Plaintiff       :

v.                            :       Case #: 08-1213 (CKK)

United States of America,    Defendant    :

### Request for Injunction Pending Interlocutory Appeal
### Pursuant to Federal Rules of Civil Procedure Rule 62(c)

That Plaintiff prays that he and his spouse will suffer irreparable harm if the above cases are litigated in Maryland. This is because Judge Peter J. Messitte will deny the Plaintiff et al their lawful $3 million in assets Pramco has stolen from them with Judge Messitte's help. And therefore, Plaintiff prays that this court enjoins the clerk from dismissing the above claim until Kissi's Interlocutory Appeal and claim against Judge Messitte are decided. And here are the grounds advanced for the Injunction:

I. That Judge Messitte falsely induced Judge Sara Lioi and Judge John R. Adams to transfer the above claims to his courtroom in Maryland without telling them that he is forbidden to do so by 28 USC § 455 for once in 5/2004 Judge Messitte had "actively brokered" a plea agreement over the PJM 03-2241 Injunction the Plaintiff and his spouse have allegedly trespassed, but both deny. That eventually this agreement broke down. And at that point, Judge Messitte ought to have excused himself from all the Kissis' cases. See Exhibit A - Extract from the 5/2004 plea transcript.

II. That Judge Messitte misrepresented himself in his letters to Judges Sara Lioi and John R. Adam for failing to alert both that he was in violation of 28 US § 455 when he failed to excuse himself after he testified against Plaintiff Kissi as a government witness in 8/2006. That he failed to tell these Ohio judges that his fellow Maryland Federal Judge E. Stephen Derby had excused himself after he and Judge Messitte had testified against Kissi in 8/2006. See Exhibit B – Extract of the transcript Judge Messitte's testimony.

III. Further, Judge Messitte misrepresented himself to Judges Lioi and Adams by claiming that Plaintiff's spouse had filed claims in Ohio in violation of his Injunction. But this was false. See pp. 4-7, hereby attached - Judge Messitte's letters to Ohio Judges Lioi and Adams in 6/08.

IV. That Judge Messite's houndings amount to a retaliation against the Kissis for being helpful to the government in its investigation of Pramco, Wells Fargo and Deutsche Bank. See 28 USC § 1512

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**PETER J. MESSITTE**
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND   20770
301-344-0632

June 19, 2008

The Honorable Sara Lioi
United States District Court for the Northern District of Ohio
526 United States Courthouse
Akron, Ohio 44308-1813

Re:   <u>Pramco II, LLC v. David Kissi, et al.</u>
      Civil Case No. PJM 03-2241

Dear Judge Lioi:

It appears that David Kissi and/or his wife, Edith Truvillion Kissi, may have filed one or more suits in your court against Pramco II, LLC.  As I advised you on the telephone, the filing of any such suit may well be in violation of this Court's preliminary injunction entered on October 10, 2003 in *Pramco II LLC v. David Kissi, et al.*, Civil Case No. PJM 03-2241.

I became aware of the activity in the United States District Court for the Northern District of Ohio as a result of a pleading filed by DLA Piper and Richard Kremer, Esq. on my docket on April 28, 2008.  A copy of that paper is enclosed, and a copy of the Preliminary Injunction may be found at Exhibit 1.

You may want to transfer the cases filed by Mr. Kissi back to me to determine if they are appropriate in light of the preliminary injunction in my case.  I would appreciate it if you would alert other Judges in your court that they may wish to do the same with other cases filed by or on behalf of Mr. Kissi.

Sincerely yours,

Peter J. Messitte

Enclosures

cc:   David Kissi
      #38348-037
      FCI Elkton



P.O. Box 10
Lisbon, OH 44432
  (w/o enclosures)

Edith Truvillion
P.O. Box 77878
One Massachusetts Ave. NW
Washington, DC  20013
  (w/o enclosures)

Richard Kremen, Esq.
DLA Piper
6225 Smith Avenue
Baltimore, MD 21209
  (w/o enclosures)

James P. Ulwick
Kramon and Graham PA
One South Street, Suite 2600
Baltimore, MD 21202
  (w/o enclosures)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**PETER J. MESSITTE**
UNITED STATES DISTRICT JUDGE

**6500 CHERRYWOOD LANE**
**GREENBELT, MARYLAND   20770**
**301-344-0632**

June 19, 2008

The Honorable John R. Adams
United States District Court for the Northern District of Ohio
510 United States Courthouse
Akron, Ohio 44308-1813

Re:     <u>**Pramco II, LLC v. David Kissi, et al.**</u>
        **Civil Case No. PJM 03-2241**

Dear Judge Adams:

It appears that David Kissi and/or his wife, Edith Truvillion Kissi, may have filed one or more suits in your court against Pramco II, LLC.  As I advised you on the telephone, the filing of any such suit may well be in violation of this Court's preliminary injunction entered on October 10, 2003 in *Pramco II LLC v. David Kissi, et al.*, Civil Case No. PJM 03-2241.

I became aware of the activity in the United States District Court for the Northern District of Ohio as a result of a pleading filed by DLA Piper and Richard Kremer, Esq. on my docket on April 28, 2008.  A copy of that paper is enclosed, and a copy of the Preliminary Injunction may be found at Exhibit 1.

You may want to transfer the cases filed by Mr. Kissi back to me to determine if they are appropriate in light of the preliminary injunction in my case.  I would appreciate it if you would alert other Judges in your court that they may wish to do the same with other cases filed by or on behalf of Mr. Kissi.

Sincerely yours,

Peter J. Messitte

Enclosures

cc:   David Kissi
      #38348-037
      FCI Elkton



P.O. Box 10
Lisbon, OH 44432
  (w/o enclosures)

Edith Truvillion
P.O. Box 77878
One Massachusetts Ave. NW
Washington, DC  20013
  (w/o enclosures)

Richard Kremen, Esq.
DLA Piper
6225 Smith Avenue
Baltimore, MD 21209
  (w/o enclosures)

James P. Ulwick
Kramon and Graham PA
One South Street, Suite 2600
Baltimore, MD 21202
  (w/o enclosures)

In the U.S. District Court of the Northern District of Ohio
801 West Superior Avenue
Cleveland, Ohio 44113
(216) 357-7000

City of Cleveland,
            Plaintiff          :

                                :

v.                               :       Case #: 1:08-cv-00139-DC N

                                :

Deutsche Bank Trust Co. et al       :
             Defendant      :

### Praecipe

David Kissi and his spouse, Edith Truvillion, have already provided valuable information to the City of Baltimore about Defendant Wells Fargo's abusive lending practices that have contributed to ruin many African American families in Maryland especially in Baltimore City. And we are prepared to testify on behalf of Cleveland in same. The submission of our Affidavit #5 hereby attached notifies this court that the Kissis are willing to testify under oath against Wells Fargo and other sub-prime lenders such as Countrywide; EMC of Plano, TX; The Money Store/First Union/Wachovia; Washington Mutual Bank and Pramco of Belgium about their abusive loan practices in the minority community.

Respectfully Submitted by: _David Kissi_____

David Kissi
38348037
Federal Satellite Low Elkton
PO Box 10
Lisbon, OH  44432

### Certificate of Service

That on this day of 7/5/08, I, David Kissi, did cause the U.S. Postmaster to deliver a copy of this Praecipe and Affidavit to Plaintiff, the City of Cleveland, c/o: its attorney Mark A. Stanton, 1300 Rockefeller Bldg., 614 Superior Ave, NW, Cleveland, OH 44113 and Deutsche Bank et al c/o its attorney Hugh McKay, Porter, Wright, Morris & Arthur, 1700 Huntington Bldg., 925 Euclid Ave., Cleveland, OH 44115.

_David Kissi_____

David Kissi



In the U.S.District Court of Maryland
101 W. Lombard St.
Baltimore, MD 21201

Mayor and the
City Council of Baltimore,    Plaintiff    :
:
:    Case #: L08-cv-062
:
v.    :
:
Wells Fargo,    Defendant    :

### Praecipe

David Kissi and his spouse, Edith Truvillion, have already provided valuable information to the City of Baltimore about Defendant Wells Fargo's abusive lending practices that have contributed to ruin many African American families in Maryland especially in Baltimore City. The submission of our Affidavit #5 hereby attached notifies this court that the Kissis are willing to testify under oath against Wells Fargo and other sub-prime lenders such as Countrywide; EMC of Plano, TX; The Money Store/First Union/Wachovia; Washington Mutual Bank and Pramco of Belgium about their abusive loan practices in the minority community.

Respectfully Submitted by: _____
David Kissi
38348037
Federal Satellite Low Elkton
PO Box 10
Lisbon, OH 44432

### Certificate of Service

That on this day of 5/4/08, I, David Kissi, did cause the U.S. Postmaster to deliver a copy of this Praecipe and Affidavit to Plaintiff, the Mayor of the City of Baltimore, City Hall 100 N. Holliday St., Baltimore, MD 21202 and to Defendant Wells Fargo, 464 California St., San Francisco, CA 94104.

_____
David Kissi




U.S. District Court for Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

| U.S. | Plaintiff | : | |
| --- | --- | --- | --- |
| v. | | : | Case # AW05-cr-0254 |
| David Kissi | Defendant | : | |
| | | : | |

## AFFIDAVIT # 5

Re: Offer to Testify As A Witness On Behalf Of The U.S. Government
And Attorneys Generals of: Maryland, New York, Ohio, Texas, Pennsylvania, Connecticut,
Massachusetts, California, Florida and the Virgin Islands In Pursuit of Criminal and Civil Sanctions
Against The Abusive Mortgage Practices
By Subprime Lenders: The Money Store/First Union/Wachovia, Wells Fargo, Countrywide, Pramco
of Belgium, Deutsche Bank of New York, Ameriquest , Washington Mutual, EMortgage Solutions of
Baltimore, MD, EMC of Plano, TX and American Financial Corporation

That I, Affiant Edith Truvillion, am at least 18 years of age and I do have a firsthand knowledge of this matter because my spouse, David Kissi, and I have for many years borrowed mortgage funds from some of these subprime lenders, i.e, The Money Store/First Union/Wachovia, Wells Fargo, Countrywide, Pramco of Belgium and EMC of Plano, TX. And that I can make the following assertions under oath:

That because my spouse and I are African Americans, the above subprime lenders charged us excessive interest rates relative to what we were led to believe prior to closing. And the interest rates were higher than they charge White borrowers similarly situated. In all our dealings with this group of subprime lenders their terms of loans were not transparent as the Federal Lending Credit Act requires lenders to be and subsequently unexplained increases in monthly mortgage payments a year after closing made it hard to keep up payments. And instead of mutual workouts, these lenders usually threatened us with foreclosure, a tactic they never applied to White borrowers in similar instances. In one instance, C. Lawrence Wiser, The Money Store's collection agent, threatened to foreclose on our business DK&R Company's Riggs Hill commercial property if he didn't receive the monthly mortgage payments on the first of each month, whereas, virtually all mortgage holders for residential and commercial properties and ordinary leases according to the U.S. commercial code are entitled to at least 5 days of grace. After much debate on this issue, Wiser proceeded to foreclose, and to shield our equity, we did put the Howard County Riggs Hill properties into Chapter 11 in 9/2000. Up to now, Wiser, despite our repeated demands, never gave us a full accounting supported by an Affidavit of all the principal and interest payments we made from 11/1989 through 6/2000. Also, Wiser never gave us credit for about $100,000 we paid The Money Store from 11/1998 through 6/2000.

(10)

That for all the above, I and my spouse, David Kissi, are willing to voluntarily testify in conjunction with other mortgage borrowers who were injured by this group of subprime lenders in order to assist the government in its investigation of their abusive lending practices. Our cooperation affects the public interest, because when subprime lenders unlawfully foreclose or borrowers are forced into bankruptcies due to the activities of subprime lenders state and federal tax revenues are diminished and mortgage-backed securities suffer thereby creating the conditions for a recession. Thus, for our cooperation to assist law enforcement and the greater public interests, this court should consider to reduce David Kissi's 30 month sentence to time already served and waive all fines, penalties and assessments he is now facing. And because of our cooperation and voluntary offer to testify as credible government witnesses, the court should consider to dissolve Pramco's current Preliminary Injunction because in its current form, the injunction injures not only my spouse and I, but also the public interest.

That finally we pray that we are awarded 10-30% bounty or award from all fines, penalties and assessments that all the various states' Attorneys Generals and that the U.S. will collect from these subprime lenders. And for Pramco to suggest that we should be silenced by a Permanent Injunction amounts to obstruction of justice.

Respectfully Submitted by: _Edith Truvillion_ 3/3/08

Edith Truvillion
325 Pennsylvania Ave, SE
Washington, DC 20003

Notary:
Subscribed and sworn to before me a Notary Public for the State of _Maryland_ and the
County of _Baltimore_ .    My Commission Expires: _Aug 1, 2010_ .

Signed by: _Sandra Noey_

Certificate of Service
That on this day of 3/3/08 a copy of this Affidavit was sent by U.S. mail to: Assistant U.S. Attorney Barbara Sale, 36 S. Charles St. Baltimore, MD 21201; The Honorable Judge Joseph R. Goodwin, U.S. District Court for WV, PO Box 2546, Charleston, WV 25329; Robert C. Rudge, Jr., Special Agent In Charge, Federal Bureau of Investigation, 3311 East Carson St., Pittsburgh, PA 15203; U.S. Attorney Mary Beth Buchanan, 633 U.S. Post Office, Pittsburgh, PA 15219; Neal Power, Chief, Economic Crime Unit, FBI Headquarters, J. Edgar Hoover Building, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535-0001; Baltimore Mayor Sheila Dixon, City Hall, 100 N. Holliday St., Baltimore, MD 21202; and the Attorneys Generals of Maryland, New York, Ohio, Texas, Pennsylvania, Connecticut, Massachusetts, California, Florida and the Virgin Islands.

_Edith Truvillion_
Edith Truvillion

11

08-1874.Docket

| Court<br>Home | Case<br>Search | Calendar | Opinions | Orders/Judgments | Briefing<br>Orders<br>Report | Billing<br>History | XML | TXT | Logout |

## General Docket
## United States Court of Appeals for the Fourth Circuit

**Court of Appeals Docket #:** 08-1874                                   **Docketed:** 08/19/2008
**Nature of Suit:** 3443 Civil Rights Accommodations
Mayor and City Council of Balt v. Wells Fargo Bank NA, et al
**Appeal From:** United States District Court for the District of Maryland at Baltimore

**Case Type Information:**
   1) Civil Private
   2) private
   3) null

**Originating Court Information:**
   **District:** 0416-1 : 1:08-cv-00062-BEL
   **Presiding Judge:** Benson Everett Legg, Chief U. S. District Court Judge
   **Date Filed:** 01/08/2008

| Date Order/Judgment:<br>05/30/2008 | Date Order/Judgment EOD:<br>05/30/2008 | Date NOA Filed:<br>06/30/2008 |

**Prior Cases:**
   None

**Current Cases:**
   None

| MAYOR AND CITY COUNCIL OF BALTIMORE<br>    Plaintiff - - | George Albert Nilson<br>Direct: 410-396-4094<br>[NTC For Information Only]<br>BALTIMORE CITY DEPARTMENT OF LAW<br>City Hall<br>100 North Holliday Street<br>Baltimore, MD 21202<br><br>John Peter Relman<br>Direct: 202-728-1888<br>[NTC For Information Only]<br>RELMAN & DANE, PLLC<br>Suite 600<br>1225 19th Street, NW<br>Washington, DC 20036-0000<br><br>Suzanne Sangree<br>[NTC For Information Only]<br>PUBLIC JUSTICE CENTER<br>1 North Charles Street<br>Baltimore, MD 21201-0000 |

v.

| | |
|---|---|
| **WELLS FARGO BANK NA**<br>Defendant - Appellee | Michael P. Kelly<br>Direct: 202-371-7282<br>[NTC For Information Only]<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM,<br>LLP<br>1440 New York Avenue, NW<br>Washington, DC 20005-2107 |
| **WELLS FARGO FINANCIAL LEASING,**<br>**INCORPORATED**<br>Defendant - Appellee | Michael P. Kelly<br>Direct: 202-371-7282<br>[NTC For Information Only]<br>(see above) |

v.

| | |
|---|---|
| **DAVID M. KISSI (Federal Prisoner: 38348-037)**<br>Party-in-Interest - Appellant | David M. Kissi<br>[NTC Pro Se]<br>FCI Elkton<br>Federal Correctional Institution<br>P. O. Box 10<br>Lisbon, OH 44432 |

---

**MAYOR AND CITY COUNCIL OF BALTIMORE,**

      Plaintiff

v.

**WELLS FARGO BANK NA; WELLS FARGO FINANCIAL LEASING, INCORPORATED,**

      Defendants - Appellees

v.

**DAVID M. KISSI,**

      Party-in-Interest - Appellant

---

| | | |
|---|---|---|
| 08/19/2008 | 1 | Case docketed. Originating case number: 1:08-cv-00062-BEL. Case manager: LNesbitt. Date notice of appeal filed: 06/30/2008 [08-1874] |
| 08/20/2008 | 2 | FEE NOTICE issued to David M. Kissi - initial notice. Fee or application to proceed as indigent due 09/04/2008 Originating case number: 1:08-cv-00062-BEL. [08-1874] |
| 08/20/2008 | 3 | INFORMAL BRIEFING ORDER filed. Informal Opening Brief due 09/15/2008 Informal response brief, if any: 17 days after informal opening brief served [08-1874] |

District of Maryland (CM/ECF Live 3.1.2)

_____

**Orders on Motions**
8:08-cv-00748-PJM Kissi et al v. Kremen

### U.S. District Court

### District of Maryland

**Notice of Electronic Filing**

The following transaction was entered on 6/3/2008 at 1:39 PM EDT and filed on 6/3/2008
**Case Name:**      Kissi et al v. Kremen
**Case Number:**    8:08-cv-748
**Filer:**
**WARNING: CASE CLOSED on 06/03/2008**
**Document Number:** 13(No document attached)

**Docket Text:**
**PAPERLESS ORDER GRANTING [5] Motion to Dismiss and CLOSING case. Signed by
Judge Peter J. Messitte on 6/3/08. (Messitte, Peter)**

8:08-cv-748 Notice has been electronically mailed to:

Maria Ellena Chavez Ruark maria.ruark@dlapiper.com

Bankruptcy Court for the District of Maryland mdb_appeals@mdb.uscourts.gov

8:08-cv-748 Notice will not be electronically delivered to:

David Kissi
38348-037
Federal Satellite Low Elkton
P.O. Box 10
Lisbon, Oh 44432

Edith Truvillion
P.O. Box 77878
One Massachusetts Ave., NW
Washington, DC 20013

(14)

District of Maryland (CM/ECF Live 3.1.2)                                        Page 1 of 2

## Orders on Motions
8:03-cv-02241-PJM Pramco II, LLC v. Kissi et al **CASE CLOSED on 08/11/2005**

### U.S. District Court

### District of Maryland

**Notice of Electronic Filing** .

The following transaction was entered on 6/19/2008 at 2:50 PM EDT and filed on 6/19/2008
Case Name:        Pramco II, LLC v. Kissi et al
Case Number:      8:03-cv-2241
Filer:
**WARNING: CASE CLOSED on 08/11/2005**
**Document Number:** 337(No document attached)

**Docket Text:**
**PAPERLESS ORDER GRANTING [300] Motion for Other Relief. Signed by Judge Peter J.
Messitte on 6/19/08. (Messitte, Peter)**

**8:03-cv-2241 Notice has been electronically mailed to:**

James P Ulwick julwick@kg-law.com, ssunderland@kg-law.com

Richard M Kremen richard.kremen@dlapiper.com

Emil Hirsch ehirsch@oconnorhannan.com, lmiddleton@oconnorhannan.com

Stanley Alpert salpert247@aol.com

Bruce L Marcus bmarcus@marcusbonsib.com

Christopher B Mead cmead@londonandmead.com

Linda Dorney ldorney@rosenblattlaw.com, info@rosenblattlaw.com

**8:03-cv-2241 Notice will not be electronically delivered to:**

Jose Andrade
200 S..Wayne Street
Arlington, Va

Robert E. Greenberg
Friedlandler Misler
1101-17th Street, NW

h     ecf     c  c     c  cg  b          ch



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PRAMCO II LLC | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Civil No. PJM 03-cv-2241; *related cases* |
| | * | Civil No. PJM 02-cv-42, Civil No. PJM |
| DAVID KISSI, et al. | * | 02-cv-43, Civil No. PJM 02-cv-44, Civil |
| | * | No. PJM 08-cv-748 |
| **Defendants** | * | |
| | * | |

## MEMORANDUM OPINION

The Court takes note of the multiple frivolous motions filed by Defendant David Kissi and his wife Edith Truvillion in this case.[1] Defendants have filed similar frivolous motions in the related cases *Pramco II LLC v. Kissi, et al.*, PJM 02-cv-42, *Pramco II LLC v. Kissi, et al.*, PJM 02-cv-43, *Pramco II LLC v. Kissi, et al.*, PJM 02-cv-44, and *Kissi, et al. v. Kremen, et al.*, PJM 08-cv-748.

All pending motions filed by Defendants in all the referenced cases are DENIED.

Cumulatively and individually, these motions continue the pattern of harassment that Defendants have engaged in throughout this litigation.

The mere fact that these motions have been filed does not entitle to Defendants to specific explanations as to why the motions are being denied, but the Court makes the following general findings:

All motions for recusal of the undersigned from sitting in these cases based on alleged bias, racial or otherwise, are fanciful.

---

[1] Some 42 such motions and other papers have been filed as of this date.

1

All requests for return of fees paid by Defendants in connection with these cases are matters between Defendants and their attorneys and have no place in this docket.

For the foreseeable future, the Court expressly declines to dissolve the preliminary injunction in effect in this case or to hold a hearing thereon. It is clear that even in the presence of the Preliminary Injunction, Defendants have taken actions suggesting total disregard of the injunction and inviting further contempt criminal proceedings (a matter to be addressed in time by this Court, United States District Judge Joseph R. Goodwin, or the United States Attorney).

Specifically, with regard to the suits filed in Ohio against Pramco, which this Court has never authorized, Defendants SHALL SHOW CAUSE in writing, if they have, in 30 days, why they should not be held in contempt of the Preliminary Injunction.

The Court has communicated with the U.S. District Court for the Northern District of Ohio and has advised that court of the existence of this Court's preliminary injunction and shall invite the Judges of that court to transfer their cases to Maryland. A copy of this Memorandum will be sent to United States District Judge Joseph Robert Goodwin, Assistant United States Attorney Barbara Sale, counsel of record in the captioned dockets, and Judges Lioi and Adams of the U.S. District Court for the Northern District of Ohio. Pending word from the U.S. Attorney in Maryland as to how the United States may decide to proceed, the Court will defer any contempt hearing in this Court. However, Defendants Kissi and Truvillion are nonetheless directed to respond in writing to the accompanying Show Cause Order within 30 days.

2



A separate Order WILL ISSUE.

/s/

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

June 19, 2008

3

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PRAMCO II LLC      *

     Plaintiff      *

     v.      *     Civil No. PJM 03-cv-2241; *related cases*

DAVID KISSI, et al.      *     Civil No. PJM 02-cv-42, Civil No. PJM

     Defendants      *     02-cv-43, Civil No. PJM 02-cv-44, Civil

     *     No. PJM 08-cv-748

## ORDER

For the reasons stated in the foregoing Opinion, it is this 19th day of June, 2008, ORDERED:

1)     All pending motions filed by Defendants in the above captioned cases are DENIED; and

2)     Defendants David L. Kissi and Edith Truvillion SHALL SHOW CAUSE in writing, if any they have, within 30 days of this date, why they should not be held in contempt of the Preliminary Injunction entered in this case.

 

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

# Exhibit A

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
 2                   SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA  :  Criminal Action No.

 5        v.                   :  PJM 03-CR-473

 6   DAVID KISSI, et al.,      :  Greenbelt, Maryland

 7           Defendant.        :  Monday, May 24, 2004

 8   _____/  11:34 A.M.

 9

10              TRANSCRIPT OF TRIAL PROCEEDINGS
           BEFORE THE HONORABLE PETER J. MESSITTE
11              UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   SPECIAL PROSECUTOR:     CHRISTOPHER B. MEAD, ESQUIRE
                            LONDON & MEAD
14                          1225 19th Street, NW, Suite 320
                            Washington, D.C.   20036
15                          (202) 331-3334

16   FOR THE DEFENDANT       PAUL R. KRAMER, ESQUIRE
     DAVID KISSI:            PAUL R. KRAMER, PA
17                          Jefferson Building
                            101 N. Charles Street, Suite 700
18                          (410) 727-5531

19   FOR THE DEFENDANT       GRANGER GEORGE MAHER, III, ESQUIRE
     EDITH TRUVILLION:       LAW OFFICE OF GRANGER G. MAHER
20                          101 N. Charles Street, Suite 70
                            Baltimore, Maryland  21209
21                          (410) 727-5531

22

23

24   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL, (301) 344-3229

25        COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES
```

1        P-R-O-C-E-E-D-I-N-G-S

2            THE DEPUTY CLERK:  Matter now coming before the Court,

3    PJM 2003-00473, United States of America versus David Kissi and

4    Edith Truvillion Kissi.  The matter now before this Court for a

5    bench trial.

6            THE COURT:  All right.  Counsel, identify yourselves.

7    First is the special prosecutor.

8            MR. MEAD:  Thank you, Your Honor.  Chris Mead on

9    behalf of the Court as the specially appointed prosecutor.

10           MR. KRAMER:  Paul Kramer on behalf of Mr. Kissi.

11           MR. MAHER:  Granger Maher on behalf of Edith

12   Truvillion.

13           THE COURT:  All right.

14           All right.  Have a seat if you would, counsel.

15           I don't -- you have, perhaps, a preliminary motion or

16   motions you want to make, Mr. Kramer.

17           MR. KRAMER:  I thought before doing so if we could

18   approach the bench on the record.

19           THE COURT:  All right.  On the record.  That's fine.

20       (Bench conference.)

21           MR. KRAMER:  Good morning.

22           THE COURT:  Good morning.

23           MR. KRAMER:  You already ruled on my motion to recuse

24   Your Honor.  I don't know whether it needs to be elaborated on

25   and may not be, but, briefly, my view was that because of so

1    many things that went on before Your Honor, in the presence of

2    Your Honor, I wasn't present but got secondhand information from

3    the other attorneys, that it would be, in my view, extremely

4    difficult to, to look at the issues in a, in a form that would

5    not have --

6            Well, it's just difficult for a Court, any Court who

7    have heard so much about the Kissis and all the things they

8    allegedly have done to be able to look at it without having all

9    the background information that you should not normally have as

10   a judge.  And that's why I raised the motion.  I was a little

11   concerned about that.

12           MR. MAHER:  Your Honor, I think that the real issue

13   is, is that the -- their defense, if there is to be a defense,

14   is based entirely upon credibility.  And I think having reviewed

15   all the documents, again we weren't here, I think the Kissis

16   have done more than enough to shoot their credibility with any

17   person not having anything else.  And that is our concern,

18   especially in --

19           You know, my biggest concern as far as Ms. Truvillion

20   goes is this matter involving whether or not she was served and

21   the expiration -- I don't think we received an answer.  I think

22   Mr. Hirsch was to follow up on that and even the cause of all

23   that.

24           And again, I think it's just a matter of credibility.

25   I think that they've done a lot to shoot their credibility with

1  anybody.

2          MR. KRAMER:  And I might add, Your Honor, the letter

3  that I sent to the special prosecutor, copied to Your Honor on,

4  the information I had from the attorneys directly handling the

5  so-called settlement negotiations was reviewed by them in

6  advance prior to my sending them and is based on what they told

7  me and my understanding.  And I was in the loop --

8          THE COURT:  You're responding to Mr. Hirsch's latest

9  letter?

10          MR. KRAMER:  No, I was in Chicago for a meeting.

11          THE COURT:  Have you seen the letter of May 20th

12  though?

13          MR. KRAMER:  Is that the one you read to me?

14          MR. MAHER:  I read it.

15          MR. KRAMER:  I'm not going to get into a letter

16  contest with him.  The answer is, the letters were reviewed by

17  the other attorneys and that's it.  And I knew for myself that

18  they were trying.

19          I mean, there's no settlement involved.  It's paying

20  off the balance.  That's all that's left.  If they ever get a

21  payoff, they pay off the balance and the additional monies that

22  Mr. Hirsch wants to me is a separate matter.  Let that be put

23  aside.  That's the basis for --

24          THE COURT:  Well, I had hoped to have some specific

25  indication of just what the number was and how far apart you

1   were and what other assets were out there to close out the civil

2   case.

3          MR. MAHER:  I can answer that question, Your Honor.

4   If the receiver's fees are to remain at $20,000, I don't know if

5   the Court --

6          THE COURT:  Well, that's up in the air.  That's

7   negotiable.

8          MR. MAHER:  Okay.  Well, assuming there's $20,000 off

9   the receiver's fees, they're within a couple thousand dollars

10  and that would be solely upon interest of settling it.

11         Mr. Hirsch apparently maintains -- I apologize.

12  Pramco maintains liens on two pieces of properties owned by the

13  Kissis free and clear that would more than satisfy any amount of

14  money.  So the money is there to settle the case.

15         The hold-up has been to pay off the first -- well, to

16  satisfy the judgments, Your Honor.  The hold-up has been

17  negotiations resolving a sum of money over the payoff amount.  I

18  think that has been resolved.  It's just a question of,

19  mechanically, how is it going to be done, because of course the

20  money from the KEOGH account doesn't really belong to Mr. Kissi

21  right now.  It's in Mr. Kremen's possession from the United

22  States Bankruptcy Court.

23         And there are concerns about a date certain of when it

24  has to been paid.  Otherwise, the deal would be off and Mr.

25  Kremen would have to agree to all this.  And this is just some

1   of that on Thursday and Friday --

2          THE COURT:  Right.  I was a little distressed by Mr.

3   Hirsch's letter, quite frankly, because I'd hoped to try and do

4   something more comprehensive this morning.  The idea that you're

5   not supposed to be talking about it, Mr. Kramer, and he doesn't

6   want me to somehow put my hand in this thing is not at all where

7   I want to be.

8          I don't want to settle the case in the sense of

9   negotiating the numbers, but I want to bang heads and make

10  people come to specific numbers and stop parlaying this thing

11  into something it shouldn't be.  That's the way I am about this

12  case.

13         MR. KRAMER:  That's how I approach it too.

14         THE COURT:  Well, I agree.  And I think that's the

15  proper approach and Mr. Mead does too.

16         I think what I will do as soon as we get through here

17  is I will, we will call Mr. Hirsch and say to him, essentially,

18  look, I've got to know that you folks are in serious

19  negotiations right now and I need to know exactly where you are

20  and where Mr. Bruce is, and what other assets are there out

21  there to decide if he and -- to decide what the final number is.

22         If you think, for example, that there's more money

23  you're entitled to and requires a ruling by me, you tell me

24  immediately and I'll make a determination.  And if that has to

25  do with the extent of the receiver's fee or it has to do with

7

1    these claims for additional attorneys fees, I want to know that

2    right now.

3            And I'll make the rulings immediately on these issues

4    so we can make sure we know where everybody is.  And we'll get

5    on the phone with him right away and tell him that.

6            MR. KRAMER:  That's fine.  That's all we ask.

7            THE COURT:  That seems to me, we'll move this thing

8    along considerably.

9            MR. KRAMER:  It's really in the settlement, just the

10   payoff --

11           THE COURT:  Right.

12           MR. KRAMER:  Now, as to the criminal contempt, which

13   we're here this morning for.

14           THE COURT:  Right.  There may be some preliminary

15   things we can talk about there.

16           MR. KRAMER:  But one of the things before we even get

17   into --

18           THE COURT:  You've got a motion that you've made?

19           MR. KRAMER:  I may not have to.

20           THE COURT:  That's all right.

21           MR. KRAMER:  I may be willing to withdraw it, because

22   I -- it is one of these motions that I was kind of forced to

23   make for whatever reason.

24           THE COURT:  You don't have to apologize.  I'm not in

25   any way taking issue with that.

1          MR. KRAMER:  No, we're trying to work this matter out.

2          Mr. Kissi isn't, for obvious reasons, 100 percent

3     mentally and physically -- I think that's imminent from his

4     behavior.  We have some medical evidence to that effect.  Mrs.

5     Kissi, I sense, kind of goes along with him and that's part of

6     it.

7          I think everyone would like to resolve the contempt if

8     we could.  Of course, his main concern is whether he's going to

9     go to jail or what proper sanction should be for his behavior.

10          I advised him that although some of the counts can be

11    defended and we think we can win on, we're aware of the legal

12    terms for putting your head in the sand, at least as to one

13    count.

14          Mr. Mead has indicated what he would recommend to the

15    Court.  I guess I don't know how much involved you get in, is

16    this a civil matter -- I mean, a criminal contempt matter rather

17    than a criminal case, how much we can take back to the Kissis,

18    but I think they would like to get rid of it today.

19          THE COURT:  Well --

20          MR. KRAMER:  I mean, that's the bottom line.  We can

21    withdraw --

22       (Discussion held off the record.)

23          MR. KRAMER:  For example, whether home detention might

24    be an alternative; whether community service could be an

25    alternative.  Although he's fighting for every cent because his

1    so-called life savings have now been taken, he does have assets

2    that could not only pay off the debt, but could pay some kind of

3    fine in lieu of jail.

4            He had just gotten a contract from the government.

5    They were successful business people and that could be lost if

6    he goes to jail too.  And he hasn't walked away, because I'm not

7    free.  I'm not paid as much as I should be.  I might have to ask

8    Mr. Hirsch to collect the balance of my fee, I joke with him,

9    but he does have some assets to pay a fine.

10           THE COURT:  Look, I would like to see the civil

11   litigation resolved.  I mean, that to me is the main, main thing

12   here that gives rise to all this in the first place.  Obviously,

13   there are some issues involving respect for the Court's order

14   that may survive that issue.  But apart from that, the main

15   event is the civil litigation which is why I've tried to put the

16   squeeze on Mr. Hirsch to tell us a number here and let's stick

17   with it, and let's see what there is to apply to it and see if

18   we can't get all this resolved.

19           Obviously, the threat of these proceedings has had a

20   chastening effect on Mr. and Mrs. Kissi.  I think they moved

21   considerably from where they once were in this litigation, which

22   is one of fairly significant resistance to, at least, trying to

23   come up with some of the assets or at least not being able to

24   oppose that.

25           As I say, I will get on the phone with Hirsch right

1  away after these proceedings and tell him how important it is to

2  get this thing concluded right away.  And I don't know.  He

3  says, he'll only talk to Mr. -- it's true, there are other

4  lawyers out there besides you, aren't there?

5          MR. KRAMER:  Well, I haven't really handled the civil

6  negotiation.  I've been working the background with the other

7  lawyers.  And as much as Mr. Kissi felt that I could do better

8  in negotiating than the others, I did not choose to do so for a

9  lot of different reasons.

10          THE COURT:  Let me put it to you this way:  I think

11  you ought to be involved in that negotiation to the extent that

12  I would certainly look favorably upon the successful conclusion

13  of the civil litigation in terms of what might happen here.

14          And I'll tell you, there's another matter we need to

15  sort of open up and talk about.  You've cited a rather

16  compelling case from the Supreme Court, which I did talk to Mr.

17  Mead about.

18          And you'll notice that Stewart Berman is back sitting

19  here, because we talked to the U.S. Attorney, Mr. Mead and I,

20  after we got your letter and we said that we've got this case,

21  and I think that these folks have raised a valid point.

22          And I said, and I think, perhaps, you ought to come in

23  and hear at least the preliminaries in this case this morning,

24  because my sense is that I should give you an option as the U.S.

25  Attorney first maybe for 30 days to study whether you want to

# Exhibit B

*EXHIBIT B*

*EXTRACT OF JUDGE MESSITTE's*

*TESTIMONY ON BEHALF OF THE US AT DAVID KISSI's TRIAL*

1

1       IN THE UNITED STATES DISTRICT COURT
2       FOR THE DISTRICT OF MARYLAND (GREENBELT)
           AT BALTIMORE

3              TRANSCRIPT OF PROCEEDINGS

4   ---------------------------x
                                :
5   UNITED STATES OF AMERICA,   :        CRIMINAL ACTION
                                :        NO. 8:05-CR-00254
6   vs.                         :
                                :
7   DAVID M. KISSI,             :
                                :        August 2, 2006
8          Defendant.           :
                                :
9   ---------------------------x

10                    TRIAL
                   VOLUME III
11
12      BEFORE THE HONORABLE JOSEPH R. GOODWIN
             UNITED STATES DISTRICT JUDGE
13

14  APPEARANCES:

15  For the United States:      MR. JONATHAN BIRAN
                                MS. BARBARA S. SALE
16                              Assistant U.S. Attorneys
                                36 S Charles Street
17                              Fourth Floor
                                Baltimore, MD   21201

18  For the Defendant:          MR. FRED WARREN BENNETT
                                Attorney at Law
19                              6301 Ivy Lane
                                Suite 419
20                              Greenbelt, MD   20770

21

22

23  Court Reporter:            Lisa A. Cook, RPR-RMR

24  Proceedings recorded by mechanical stenography; transcript
    produced by computer.
25

(4)

2

<u>I N D E X</u>

<u>DEFENDANT'S WITNESS:</u>                                      <u>PAGE</u>

**RICHARD MOORE**
    Direct Examination (By Mr. Bennett) . . . . . 5
    Cross Examination (By Ms. Sale) . . . . . . . 8
    Redirect Examination (By Mr. Bennett) . . . . 11


<u>GOVERNMENT'S WITNESSES:</u>                                   <u>PAGE</u>

**RICHARD KREMEN**
    Cross Examination (By Mr. Bennett) . . . . . 12
    Redirect Examination (By Ms. Sale) . . . . . 27
    Recross Examination (By Mr. Bennett) . . . . 29


**EMIL HIRSCH**
    Direct Examination (By Mr. Biran) . . . . . . 54
    Cross Examination (By Mr. Bennett) . . . . . 92
    Redirect Examination (By Mr. Biran) . . . . . 122


**PETER MESSITTE**
    Direct Examination (By Ms. Sale) . . . . . . 124
    Cross Examination (By Mr. Bennett) . . . . . 153
    Redirect Examination (By Ms. Sale) . . . . . 172


**GARY BAXLEY**
    Direct Examination (By Ms. Sale) . . . . . . 175
    Cross Examination (By Mr. Bennett) . . . . . 181
    Redirect Examination (By Ms. Sale) . . . . . 186


**MARIE CHAVEZ-RUARK**
    Direct Examination (By Ms. Sale) . . . . . . 187
    Cross Examination (By Mr. Bennett) . . . . . 198
    Redirect Examination (By Ms. Sale) . . . . . 214

124

1  your lawyer in a quiet tone.  That's the end of the

2  discussion.

3            THE DEFENDANT:  Your Honor, I don't want to --

4            THE COURT:  Go sit down.

5            (Bench conference concluded)

6            THE COURT:  All right, sir.

7            **PETER MESSITTE**, GOVERNMENT'S WITNESS, SWORN

8            THE CLERK:  If you would, state your name and then

9  spell your name for the record.

10            THE WITNESS:  My name is Peter Messitte,

11  M-e-s-s-i-t-t-e.

12                       DIRECT EXAMINATION

13  BY MS. SALE:

14  Q.    And when you're in a federal courtroom do you usually

15  sit in a different place?

16  A.    Usually I do.

17  Q.    Are you a United States District Judge, Your Honor?

18  A.    I am for this district.

19  Q.    And when were you appointed to the federal bench?

20  A.    1993.

21  Q.    And before that, how were you employed?

22  A.    For eight years before that I was a Circuit Court judge

23  in Montgomery County, Maryland.  And then for about 14 years

24  before that, I was a practicing attorney in Montgomery

25  County.

(6)

125

Q.    Now, what courthouse do you sit in?

A.    The southern division courthouse of this court which is in Greenbelt, Maryland.

Q.    And have you been in that courthouse since it was opened?

A.    Right.  That would be since '94.

Q.    How many judges were sitting in Greenbelt in the year 2000?

A.    We had three, three U.S. district judges.  There were some magistrate judges and bankruptcy judges as well, but three district judges.

Q.    Now, what part of the state is covered by the, the Greenbelt courthouse?

A.    It's Montgomery, Prince George's, Charles, Calvert, and St. Mary's counties.

Q.    Now, in 2002 how were cases assigned among the three judges there?

A.    They were randomly assigned.

Q.    And if a case was related to a case that was already assigned to you, would that automatically follow?

A.    Yes.  Any related case would go to the same judge.

Q.    Now, inviting your attention to the very early part of 2002, were you assigned three matters between a company called Pramco and an individual by the name of David Kissi?

A.    I was.

1  Q.   And who represented Pramco in that litigation?

2  A.   Emil Hirsch.

3  Q.   Do you remember who represented Mr. Kissi?

4  A.   Well, you know, the case started as confessed judgment

5  cases, so I'll say more about that later.   But there were a

6  number of attorneys.   The first one's name was Mark Epstein

7  if I recall.   I'm not sure of the sequence, who came after.

8  Q.   Now, when you started as a confessed judgment matter,

9  who was the note holder?

10 A.   Pramco was the note holder at the time.

11 Q.   And what was your understanding as to how Pramco came

12 to have these three notes?

13 A.   Well, there were notes that had been executed by an

14 entity known as DK&R.   Mr. and Mrs. Kissi had guaranteed

15 those notes.   Apparently there was a default, and there was

16 an acceleration on the debt that was called by the note

17 holders.

18         The notes had been guaranteed by the Small

19 Business Administration which paid the lenders, the banks.

20 And then the Small Business Administration had whatever

21 rights the banks had against DK&R and the Kissis.   They

22 then, as I undersand it, assigned the notes, sold the notes

23 to Pramco who then became the note holders.

24 Q.   And would you tell us very briefly what is meant by

25 confessed judgment?



# Exhibit C

*EXHIBIT*

**U.S. District Court**
6500 Cherrywood Lane, Greenbelt, MD 20770

| | | |
|---|---|---|
| David Kissi, et al | Appellant | : |
| v. | | |
| Richard M. Kremen, | Appellee | :    Case # PJM 08-cv-00748 |
| v. | | : |
| DK&R Company | Debtor | : |
| Richard M. Kremen, | Trustee | : |

**Affidavit**
**In Support of Title Attorney Frank P. Donnelly's Title Search of DK&R's Chapter 7 Estate**
**Located at 10630 Riggs Hill Rd., Annapolis Junction, MD, Units U, V & W**

That I, Edith Truvillion, am at least 21 years of age and I do have a firsthand knowledge of this matter because I and my spouse, David Kissi, were co-guarantors of DK&R's Riggs Hill property mortgage notes and that I can assert under oath:

That a record search undertaken by Frank P. Donnelly, a Maryland title attorney, in 5/2008 indicates that when The Money Store/Small Business Administration, the former mortgage holders, sold the Riggs Hill notes to Pramco in 12/2009, there is no indication that the former mortgage holders conveyed a marketable title supported by an Affidavit to Pramco. That further, when Trustee Richard M. Kremen sold below cost without appraising the properties in 2003, there is nothing in the Howard County Circuit Court land records about Pramco being the legal title holder of the Riggs Hill properties. See pp. 3- 21 - Donnelly's title search. This shows that Pramco had no right to have filed any claim at all against DK&R's Chapter 7 Estate in bankruptcy case # 00-61147ESD, or against us the mortgage guarantors and our Ammendale Trust. Therefore, the $855,000 Pramco collected fraudulently from us in satisfaction of the $50,000 note it bought from The Money Store/Small Business Administration should be refunded three times plus damages and emotional distress to the nominal sum of $100 million.

That this Court, too, should know for the record that Richard M. Kremen never posted a bond upon his appointment by the court to act as DK&R's Chapter 7 Trustee. And that Receiver Richard E. Greenberg failed to do same. Therefore every action they took in the furtherance and enforcement of Pramco's fraudulent claims is hereby reversible.

Respectfully Submitted by: *Edith Truvillion*

Edith Truvillion, Affiant
PO Box 77878, One Mass. Ave, NE
Washington, DC 20013
202-668-4154

## Certificate of Service

That on this day of 5/28/08, I did cause the U.S. Postmaster to deliver by regular mail copies of this Affidavit to Richard M. Kremen, DLA Piper, 6225 Smith Ave, Baltimore, MD 21209, Terri Nunan, President, Pramco, 230 CrossKeys Office Park, 6894 Pittsford Palmyra Road, Fairport, NY 14450, Chief Judge Karen Williams, 4th Circuit Court of Appeals, 1100 East Main St., Richmond, VA 23219, U.S. District Court Judge Reginald B. Walton, U.S. District Court for the District of Columbia, 333 Constitution Ave, NW, Washington, DC 20001, U.S. District Judge Alexander Williams, U.S. District Court for Maryland, 6500 Cherrywood Lane, Greenbelt, MD 20770, Valerie E. Caproni, General Counsel, FBI, 935 Pennsylvania Ave, NW, Washington, DC 20535, and Sharon Ormsby, Chief, FBI Financial Fraud Unit, 935 Pennsylvania Ave, NW, Washington, DC 20535.

Edith Truvillion

Notary:

Subscribed and sworn to before me a Notary Public for the State of Maryland and the

County of Prince George's . My Commission Expires: _____

EZE NWOJI
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires August 18, 2008

Signed by: _____



**FRANK P. DONNELLY**

ATTORNEY & COUNSELOR AT LAW
REAL ESTATE CLOSINGS • GENERAL PRACTICE

| **MAIN OFFICE**<br>All Correspondence | **ADMITTED TO PRACTICE:**<br>U.S. Supreme Court | **OTHER LOCATIONS** |
|---|---|---|
| 49 Old Solomons Island Road, Suite 100<br>Annapolis, MD 21401 | Maryland<br>District of Columbia | 6401 Golden Triangle Drive, Suite 450<br>Greenbelt, MD 20770 |
| Telephone: (410) 266-1414 | Virginia Bar – Registered Real Estate Settlement Agent | 10480 Little Patuxent Parkway, Suite 400<br>Columbia, MD 21044 |
| Facsimile: (410) 266-3002 | | 3 Bethesda Metro Center, Suite 750<br>Bethesda, MD 20814 |
| Email: fdonnelly@fdonnelly.com | May 16, 2008 | 11350 Random Hills Road, Eighth Floor<br>Fairfax, VA 22030 |
| | | 5335 Wisconsin Avenue, N.W., Suite 440<br>Washington, DC 20015 |

Edith Truvillion
4305 Ammendale Road
Beltsville, MD 20705

RE:    10630 S Riggs Road
        Units U, V, and W

Dear Ms. Truvillion:

Please find enclosed a copy of the Deeds that transferred the above referenced properties unto Moisture Protection Technologies, Inc., and Morgan Investments, LLC.

This is all that the public records will allow us to access. We are not able to obtain copies of the entire closing package. Only the purchasers and their title companies would have access to those records.

If you need additional information you may want to contact Richard Kremen, the trustee under the bankruptcy. You can also try to contact Michael G. Ritchey the settlement attorney who handled units V and W. He can be reached at 410-848-7777. Lakeview Title Company, Inc. handled the sale of unit U, their file number is 03-8237 and they can be reached at 410-992-4186.

Please see the enclosed invoice. If you need any further information, or I may be of any further assistance please feel free to contact me at 410-266-1414. Thank you for your time.

Sincerely,

Lori M. Castleman
Office Manager
Frank P. Donnelly, Attorney at Law

/encls
LMC/lmc

③

LIBER 07691 FOLIO 271

*Return to:*

**STONER, PRESTON
& BOSWELL, CHTD.**
186 E. Main Street, P.O. Box 389
Westminster, Maryland 21158-0389
(410) 848-7777 and 876-7371

000443

## DEED

THIS DEED, made this __2 3__ of __September__, in the year two thousand and three and between RICHARD M. KREMEN, TRUSTEE FOR THE BANKRUPTCY ESTATE OF DK&R COMPANY, party of the first part, Grantor, and MORGAN INVESTMENTS LLC, a Maryland Limited Liability Company, party of the second part, Grantee.

WHEREAS, on September 7, 2000, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code; and

WHEREAS, on July 13, 2001, the Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Estate"); and

WHEREAS, Richard M. Kremen was appointed as Trustee for the Bankruptcy Estate; and

WHEREAS, on August 8, 2003, the Trustee brought a Motion of Chapter 7 Trustee Pursuant to Section 363 of the Bankruptcy Code for Authority to Sell Real Property Free and Clear of All Liens, Claims and Encumbrances in the United States Bankruptcy Court for the District of Maryland for the real property known as Riggs Hill Condominium, Units V and W, 10630 South Riggs Hill Road, Jessup, Howard County, MD 20794 (the "Property"); and

WHEREAS, on September 10, 2003, the Bankruptcy Court entered an Order Authorizing Sale of Property of the Estate Free and Clear of Liens, Claims and Encumbrances a certified copy of which will be recorded herewith; and

All Taxes on Assessments certified to the Collector of Taxes for Howard County, Md. by _9/23/03_ have been paid. This statement is for the purpose of permitting recordation and is not assurance against further taxation even for prior periods, nor does it guarantee satisfaction of outstanding tax sales. 06-512917
06-512925

LIBER 0 7 6 9 I FOLIO 2 7 2

interest in the Property, but without any representations or warranties, including any warranties of title, either regular or special unto the said Grantee, its successors and assigns, in all that lot situated in Howard County, in the State of Maryland, and described as follows:

> Condominium Unit V and Unit W in Building No. 2, "UNITED AMERICAN BUSINESS CENTER AT CORRIDOR NORTH, A CONDOMINIUM", a condominium regime established by Declaration in Liber 1746 at folio 418, By-Laws in Liber 1746 at folio 445 and Condominium Plats 7429 and 7430, recorded among the Land Records of Howard County, Maryland. Together with the appurtenances and advantages thereunto belonging, including particularly but not by way of limitation (i) the undivided percentage interest in the common elements, (ii) the undivided percentage interest in common profits and expenses of the council of unit owners, and (iii) all other rights and privileges made appurtenant to said unit specified in the aforesaid condominium documents;

BEING the same property which by Deed dated February 28, 1990, and recorded among the Land Records of said County in Liber 2142, Folio 0282 was granted and conveyed by Ameribanc Service Corporation, a Virginia Corporation, to DK&R Company, a Delaware corporation.

Together with any buildings and improvements thereon erected, made or being; and the rights, alleys, ways, waters, privileges, appurtenances and advantages to the same belonging, or in any wise appertaining.

To have and to hold the property unto and to the use and benefit of the Grantee in fee simple.

WITNESS the Hand and Seal of the said Grantor.

WITNESS:

_____

_____
Richard M. Kremen, Trustee for
DK&R Company

~BALT1:4084024.V1

2

LIBER 0 7 6 9 1 FOLIO 2 7 3

STATE OF MARYLAND, _Baltimore_ COUNTY, TO WIT:

I HEREBY CERTIFY, that on this ___23___ day of ___September___, 2003, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Richard M. Kremen, Trustee, known (or satisfactorily proven) to me to be the person whose name is subscribed to the within Deed and acknowledged the foregoing Deed to be his act as Trustee aforesaid and in my presence signed and sealed the same, and further acknowledged that the consideration as stated above is true and correct.

AS WITNESS my Hand and Notarial Seal.

_Lauren L. Ger..._
Notary Public

My Commission Expires: ___4/1/04___

CERTIFICATION

This is to certify that the within instrument has been prepared by or under the supervision of the undersigned Maryland attorney, who has been admitted to practice before the Court of Appeals of Maryland.

Richard M. Kremen

HO CIRCUIT COURT (Land Records) [MSA CE 53-7675] MDR 7691, p 0273. Printed 05/16/2008  Online 05/24/2004.
~BALT1:4084024.v1

3

6

LIBER 0 7 6 9 1 FOLIO 2 7 4

## AFFIDAVIT

The Undersigned, under penalties of perjury, hereby states as follows:

1.  I acted as the agent/settlement attorney for Morgan Investments, LLC, a Maryland Limited Liability Company for the acquisition of two condominium units, known and designated as Unit V & W, Building No. 2, United American Business Center at Corridor North, a condominium, more particularly described in a Deed from Richard M. Kremen, Trustee unto Morgan Investments, LLC.

2.  The sale was pursuant to an Order of the United States Bankruptcy Court, which approved the sale of the property for the contract purchase price of TWO HUNDRED THIRTEEN THOUSAND DOLLARS ($213,000.00).

3.  The purchase price in that amount was paid, and documentary stamps and state and local transfer taxes were calculated on that amount.

4.  The statements made herein are true and correct, to the best of my knowledge, information and belief.

5.  This affidavit is made pursuant to the provisions of the ANNOTATED CODE OF MARYLAND, Real Property Article, Section 12-104 and 13-204.

MICHAEL G. RITCHEY
STONER, PRESTON & BOSWELL
188 East Main Street, P. O. Box 389
Westminster, Maryland  21158-0389
410-848-7777

Settlement Attorney for Morgan
Investments, LLC

STATE OF MARYLAND, CARROLL COUNTY, to wit:

I HEREBY CERTIFY, that on this ___ day of _____, 2003, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared **MICHAEL G. RITCHEY**, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

AS WITNESS my hand and Notarial Seal.

My Commission Expires 11/01/06          Notary Public      Oneda M. Shipley

⑦



LIBER07691 FOLIO275

**SO ORDERED**

**Dated September 09, 2003**



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| DK&R COMPANY, | * | Case No. 00-6-1147-SD |
| Debtor. | * | Chapter 7 |

\* \* \* \* \* \* \* \* \*

### ORDER AUTHORIZING SALE OF PROPERTY OF THE ESTATE
### FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES
### (Riggs Hill Condominium Units V and W)

Upon consideration of the Motion for Authority to Sell Property of the Estate Free and Clear of Liens, Claims and Encumbrances (the "Motion") filed by Richard M. Kremen, Chapter 7 Trustee for the bankruptcy estates of DK&R Company (the "Trustee"), and all objections thereto, and it appearing that sufficient and proper notice of the Motion has been given to all parties in interest and that the sale of the Riggs Hill Condominium, Units V and W, 10630 South Riggs Hill Road, Jessup, Howard County, Maryland 20794 (the "Property") pursuant to the terms of the Motion is in the best interests of the bankruptcy estate, and this Court finding that the purchase price set forth in the Motion and the contract attached thereto is an adequate price for the Property, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion is hereby GRANTED and all oppositions and objections to the Motion not previously withdrawn are OVERRULED; and it is further

*270, 274*

LIBER 0 7 6 9 1 FOLIO 2 7 6

ORDERED, that the Trustee is hereby authorized to sell the Property free and clear of liens, claims, encumbrances and interests to Hugh G. Hardesty, Jr. and Joseph B. Hardesty pursuant to the terms of the Motion; and it is further

ORDERED, that the Trustee is hereby authorized and empowered to execute and deliver such documents as are necessary to effectuate the sale of the Property; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale a broker's commission equal to five percent (5%) of the sale price; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale the Trustee's commission and attorneys' fees subject to further order of this Court; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale any valid liens and encumbrances with the exception of the secured claim asserted by Pramco II, LP; and it is further

ORDERED, that all valid liens, claims and encumbrances against the Property shall attach to the proceeds of sale until satisfied; and it is further

ORDERED, that the Trustee is authorized to place $30,000 of the net sale proceeds in an interest bearing account for the purpose of reimbursing the Trustee and his counsel for services rendered for the estate, such payment being subject to further order of this Court; and it is further

ORDERED, that the Trustee shall hold the balance of the proceeds for distribution pursuant to the priorities set forth in the Bankruptcy Code.

cc:    Richard M. Kremen, Esquire
       Maria Ellena Chavez-Ruark, Esquire
       Piper Rudnick LLP
       6225 Smith Avenue
       Baltimore, Maryland 21209-3600

       Mark Neal, Esquire
       Office of the U.S. Trustee
       Suite 350
       300 West Pratt Street
       Baltimore, Maryland 21201

LIBER 07691 FOLIO 277

DK&R Company
c/o David Kissi, President
4305 Ammendale Road
Beltsville, Maryland 20705

David Kissi
4305 Ammendale Road
Beltsville, Maryland 20705

David Kissi
1112 West Pratt Street
Baltimore, Maryland 21223

Glenn D. Solomon, Esquire
Offit, Kurman, Yumkas & Denick, P.A.
8 Park Center Court, Suite 200
Owings Mills, Maryland 21117

Emil Hirsch, Esquire
O'Connor & Hannan, LLP
1666 K Street, NW, Suite 500
Washington, DC 20006

Hugh G. Hardesty, Jr.
Joseph B. Hardesty
10620 Riggs Hill Road
Jessup, Maryland 20794

Gary Baxley
Baxley Realty Advisors, Inc.
10400 Little Patuxent Parkway
Suite 280
Columbia, Maryland 21044

```
IMP FD SURE $        28.88
RECORDING FEE        75.88
RECORDATION T      1,865.88
TR TAX COUNTY      2,138.88
TR TAX STATE       1,865.88
TOTAL              3,955.88
Rcst #082    Rcpt # 43222
MDR     BF     Blk # 2356
Oct 87, 2883      81:28 PM
```

*** END OF ORDER ***

I hereby certify that the
foregoing is a true copy of the
original thereof now on file in
this office.

Dated this _16_ day of
_September_ 20__

_____
Clerk, U.S. Bankruptcy Court
for the District of Maryland

(10)

LIBER 07691 FOLIO 278

## State of Maryland Land Instrument Intake Sheet
☐ Baltimore City   ☒ County: _KOWARD_

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only.*

**(Type or Print in Black Ink Only—All Copies Must Be Legible.)**
( ☐ Check Box If Addendum Intake Form is Attached.)

| 1 | Type(s) of Instruments | ☒ Deed   ☐ Mortgage   ☐ Other _____   ☐ Other _____ |
|---|---|---|
| | | ☒ Deed of Trust   ☐ Lease   3 ☐ _A/C_ |

| 2 | Conveyance Type Check Box | ☐ Improved Sale Arms-Length (1) | ☐ Unimproved Sale Arms-Length (2) | ☐ Multiple Accounts Arms-Length (3) | ☐ Not an Arms-Length Sale (9) |
|---|---|---|---|---|---|

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation _____ |
|---|---|---|
| | | State Transfer _____ |
| | | County Transfer _____ |

**Consideration Amount** / **Finance Office Use Only**

| 4 | Consideration and Tax Calculations | | | Transfer and Recordation Tax Consideration | |
|---|---|---|---|---|---|
| | Purchase Price/Consideration | $ 31,000 — | Transfer Tax Consideration | $ |
| | Any New Mortgage | $ 127,500 — | X ( %) = | $ |
| | Balance of Existing Mortgage | $ — | Less Exemption Amount | $ |
| | Other: | $ — | Total Transfer Tax = | $ |
| | Other: | $ — | Recordation Tax Consideration | $ |
| | | | X ( ) per $500 = | $ |
| | Full Cash Value | $ — | TOTAL DUE | $ |

| 5 | Fees | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|
| | | Recording Charge | $ 20 — | $ 75 — | |
| | | Surcharge | $ 20 — | $ 20 — | Tax Bill: |
| | | State Recordation Tax | $ 2.65 — | $ 82.50 | |
| | | State Transfer Tax | $ 10.65 — | $ — | C.B. Credit: |
| | | County Transfer Tax | $ 3.25 — | $ — | |
| | | Other | $ — | $ — | Ag. Tax/Other: |
| | | Other | $ — | $ — | |

| 6 | Description of Property SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | District | Property Tax ID No. (1) | Granter Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|---|---|
| | | De | 2142-282 | | 48 | 18 | ☐ (5) |
| | | Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage (4) |
| | | United Business Center @ Corridor North | | | 01 | | 74/29-7496 | |
| | | Location/Address of Property Being Conveyed (2) | | | | | | |
| | | 10630 RIGGS MILL RD | | | | | Water Meter Account No. | |
| | | Other Property Identifiers (if applicable) | | | | | | |

Residential ☐ or Non-Residential ☒   Fee Simple ☐ or Ground Rent ☐   Amount: _____
Partial Conveyance? ☐ Yes ☐ No   Description/Amt. of SqFt/Acreage Transferred: _____

If Partial Conveyance, List Improvements Conveyed: _____

| 7 | Transferred From | Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|---|---|
| | | RICHARD M. KREMEN TRUSTEE OF THE BANKRUPTCY ESTATE OF DKTR COMPANY | MORGAN INVESTMENTS LLC |
| | | Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|---|---|
| | | MORGAN INVESTMENTS LLC | BAILEY JAMES R. II Trustee LOUIS CHERYL Y Trustee |
| | | New Owner's (Grantee) Mailing Address | |
| | | 3912 HANNA ROAD   SYKESVILLE MD 21784 | |

| 9 | Other Names to Be Indexed | Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|---|---|
| | | | FARMERS + MECHANICS BANK |

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | ☒ Return to Contact Person |
|---|---|---|---|
| | | Name: VEGA | ☐ Hold for Pickup |
| | | Firm: SPO | |
| | | Address: PO BOX 359 WESTMINSTER MD 21158-0359 | ☒ Return Address Provided |
| | | Phone: (410) 876-7371 | |

| 11 | Assessment Information | **IMPORTANT: BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER** |
|---|---|---|
| | | Yes ☒ No   Will the property being conveyed be the grantee's principal residence? |
| | | Yes ☐ No ☒   Does transfer include personal property? If yes, identify: |
| | | Yes ☒ No   Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). |

**Assessment Use Only - Do Not Write Below This Line**

| ☐ Terminal Verification | ☐ Agricultural Verification | ☐ Whole | ☐ Part | ☐ Tran. Process Verification |
|---|---|---|---|---|
| Transfer Number: | Date Received: | Deed Reference: | | Assigned Property No.: |
| Year | 19 | 19 | Geo. | Map | Sub | Block |
| Land | | | Zoning | Grid | Block | Lot |
| Buildings | | | Use | Parcel | Section | |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | Occ. Cd. |

REMARKS:

Distribution:  *White - Clerk's Office*
*Canary - SDAT*
*Pink - Office of Finance*
*Goldenrod - Preparer*
AOC-CC-300 (8/03)

⑪

LIBER 07659 FOLIO 058

All Taxes on Assessments certified to the Collector of Taxes for Howard County, Md. by ~~~~~~ have been paid. This statement is for the purpose of permitting recordation and is not assurance against further taxation even for prior periods, nor does it guarantee satisfaction of outstanding tax sales. ~# 512919

### DEED

THIS DEED, made this _9TH_ of _September_, in the year two

thousand and three and between RICHARD M. KREMEN, TRUSTEE FOR THE

BANKRUPTCY ESTATE OF DK&R COMPANY, party of the first part, Grantor, and 000348

/MOISTURE PROTECTION TECHNOLOGIES, INC., party of the second part, Grantee.

WHEREAS, on September 7, 2000, the Debtor filed a petition under Chapter 11 of

the Bankruptcy Code; and

WHEREAS, on July 13, 2001, the Chapter 11 case was converted to a case under

Chapter 7 of the Bankruptcy Code (the "Bankruptcy Estate"); and

WHEREAS, Richard M. Kremen was appointed as Trustee for the Bankruptcy

Estate; and

WHEREAS, on June 6, 2003, the Trustee brought a Motion of Chapter 7 Trustee

Pursuant to Section 363 of the Bankruptcy Code for Authority to Sell Real Property Free

and Clear of All Liens, Claims and Encumbrances in the United States Bankruptcy Court

for the District of Maryland for the real property known as Riggs Hill Condominium, Unit

U, 10630 South Riggs Hill Road, Jessup, Howard County, MD 20794  (the "Property");

and

WHEREAS, on August 28, 2003, the Bankruptcy Court entered an Amended Order

Authorizing Sale of Property of the Estate Free and Clear of Liens, Claims and

Encumbrances a certified copy of which will be recorded herewith; and

WITNESSETH, that in consideration of the sum of One Hundred Six Thousand

Five Hundred Dollars ($106,500) and other valuable consideration, the receipt of which is

hereby acknowledged, the said Grantor does hereby quitclaim, convey and assign all his

20.00
20.00
532.50
1065.00
532.50

(12)

LIBER 07659 FOLIO 059

right, title, and interest in the Property, but without any representations or warranties, including any warranties of title, either regular or special unto the said Grantee, its successors and assigns, in all that lot situated in Howard County, in the State of Maryland, and described as follows:

> Condominium Unit "U" in Building No. 2, "United American Business Center at Corridor North, a Condominium", a condominium regime established by Declaration in Liber 1746 at folio 418, By-Laws in Liber 1746 at folio 445 and Condominium Plats 7429 and 7430, recorded among the Land Records of Howard County, Maryland. Together with the appurtenances and advantages thereunto belonging, including particularly but not by way of limitation (i) the undivided percentage interest in the common elements, (ii) the undivided percentage interest in common profits and expenses of the council of unit owners, and (iii) all other rights and privileges made appurtenant to said unit specified in the aforesaid condominium documents;
>
> The improvements thereon being known as: 10630 Riggs Hill Road, Savage, Maryland.
>
> Parcel Identifier: Tax Account No.: 06512909
>
> Subject to encumbrances, easements, covenants, conditions, and restrictions of record.

BEING the same property which by Deed dated July 5, 1994, and recorded among the Land Records of said County in Liber 3294, Folio 0490 was granted and conveyed by C. Dennis Motrenec and Lorena T. Motrenec, his wife, to DK&R Company, a Delaware corporation.

Together with any buildings and improvements thereon erected, made or being; and the rights, alleys, ways, waters, privileges, appurtenances and advantages to the same belonging, or in any wise appertaining.

2

(13)

LIBER 07659 FOLIO 060

To have and to hold the property unto and to the use and benefit of the Grantee in fee simple.

WITNESS the Hand and Seal of the said Grantor.

WITNESS:

_Lauren L. Gern_

_(signature)_

/ Richard M. Kremen, Trustee for
DK&R Company

STATE OF MARYLAND, _BALTIMORE_ COUNTY, TO WIT:

I HEREBY CERTIFY, that on this _8th_ day of _SEPTEMBER_, 2003, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Richard M. Kremen, Trustee, known (or satisfactorily proven) to me to be the person whose name is subscribed to the within Deed and acknowledged the foregoing Deed to be his act as Trustee aforesaid and in my presence signed and sealed the same, and further acknowledged that the consideration as stated above is true and correct.

AS WITNESS my Hand and Notarial Seal.

_Lauren L. Gern_
Notary Public

_(Notary seal: LAUREN L. GERN NOTARY PUBLIC BALTIMORE COUNTY, MD)_

My Commission Expires: _4/1/04_

CERTIFICATION

This is to certify that the within instrument has been prepared by or under the supervision of the undersigned Maryland attorney, who has been admitted to practice before the Court of Appeals of Maryland.

_(signature)_

Richard M. Kremen

(14)

LIBER 0 7 6 5 9 FOLIO 0 6 1

# OWNER OCCUPANCY AFFIDAVIT

MOISTURE PROTECTION TECHNOLOGIES, INC, A MARYLAND CORPORATION, the Grantee in the within Deed hereby certify under the penalties of perjury, as evidenced by the joinder herein, that the land conveyed in this Deed is residentially improved owner-occupied real property and that the residence will be occupied by me.

_____
Witness

_____
Witness

_____
Witness

_____
Witness

_____
MOISTURE PROTECTION TECHNOLOGIES, INC
GARY D. WILSON

_____

_____

STATE OF MARYLAND, _Howard_____, to wit:

I HEREBY CERTIFY, that on this 09/09/03 before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared MOISTURE PROTECTION TECHNOLOGIES, INC, A MARYLAND CORPORATION, the party herein, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged the foregoing to be his act, and in my presence signed and sealed the same.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

REBECCA W. MCNAUGHTON
NOTARY PUBLIC
HOWARD CO., MD
MY COMM. EXPS. FEB. 14, 2006

My Commission Expires: _____

LAKEVIEW TITLE COMPANY, INC.
10320 LITTLE PATUXENT PARKWAY
SUITE 600
COLUMBIA, MD 21044

03-8237

410-992-4186

(15)

HC? CIRCUIT COURT (Land Records) [MSA CE 53-7643] MDR 7659, p. 0061  Printed 05/16/2008. Online 05/24/2004

LIBER 0 7 6 5 9 FOLIO 0 6 2

**SO ORDERED**

**Dated August 28, 2003**



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| DK&R COMPANY, | * | Case No. 00-6-1147-SD |
| Debtor. | * | Chapter 7 |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## AMENDED ORDER AUTHORIZING SALE OF PROPERTY OF THE ESTATE
## FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Upon consideration of the Motion for Authority to Sell Property of the Estate Free and Clear of Liens, Claims and Encumbrances (the "Motion") filed by Richard M. Kremen, Chapter 7 Trustee for the bankruptcy estates of DK&R Company (the "Trustee"), and all objections thereto, and it appearing that sufficient and proper notice of the Motion has been given to all parties in interest, that the sale of Riggs Hill Condominium, Unit U, 10630 South Riggs Hill Road, Jessup, Howard County, Maryland 20794 (the "Property") pursuant to the terms of the Motion is in the best interests of the bankruptcy estate, and for the reasons stated on the record at a hearing on August 15, 2003, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion is hereby GRANTED and all oppositions and objections to the Motion not previously withdrawn are OVERRULED; and it is further

I hereby certify that the foregoing is a true copy of the original thereof now on file in this office.

Dated this _44th_ day of _September 2003_

_Rosia Thomas_
Clerk, U.S. Bankruptcy Court
for the District of Maryland



LIBER 0 7 6 5 9 FOLIO 0 6 3

ORDERED, that the Trustee is hereby authorized to sell the Property free and clear of liens, claims, encumbrances and interests to Moisture Protection Technologies, Inc. pursuant to the terms of the Motion; and it is further

ORDERED, that the Trustee is hereby authorized and empowered to execute and deliver such documents as are necessary to effectuate the sale of the Property; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale a broker's commission equal to five percent (5%) of the sale price; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale the Trustee's commission and attorneys' fees subject to further order of this Court; and it is further

ORDERED, that the Trustee is authorized to pay from the proceeds of the sale any valid liens and encumbrances with the exception of the secured claim asserted by Pramco II, LP; and it is further

ORDERED, that all valid liens, claims and encumbrances against the Property shall attach to the proceeds of sale to the same extent and in the same priority as they existed against the Property prior to the sale until such liens, claims and encumbrances are satisfied; and it is further

ORDERED, that the Trustee is authorized to place $10,000 of the net sale proceeds in an interest bearing account for the purpose of reimbursing the Trustee and his counsel for services rendered for the estate, such payment being subject to further order of this Court; and it is further

ORDERED, that the Trustee shall hold the balance of the proceeds for distribution pursuant to the priorities set forth in the Bankruptcy Code.

cc:   Richard M. Kremen, Esquire
Maria Ellena Chavez-Ruark, Esquire
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600

LIBER 07659 FOLIO 064

Mark Neal, Esquire
Office of the U.S. Trustee
Suite 350
300 West Pratt Street
Baltimore, Maryland  21201

DK&R Company
c/o David Kissi, President
4305 Ammendale Road
Beltsville, Maryland 20705

David Kissi
4305 Ammendale Road
Beltsville, Maryland 20705

Edith Truvillion
4305 Ammendale Road
Beltsville, Maryland 20705

Glenn D. Solomon, Esquire
Offit, Kurman, Yumkas & Denick, P.A.
8 Park Center Court, Suite 200
Owings Mills, Maryland 21117

Emil Hirsch, Esquire
O'Connor & Hannan, LLP
1666 K Street, NW, Suite 500
Washington, DC  20006

Moisture Protection Technologies, Inc.
c/o Gary A. Wilson, President
10630-T Riggs Hill Road
Jessup, Maryland 20794

**\*\*\* END OF ORDER \*\*\***

IMP FD SURE $        28.00
RECORDING FEE        20.00
RECORDATION T       532.50
TR TAX COUNTY     1,065.00
TR TAX STATE        532.56
TOTAL             2,178.00
Rest HD84    Rcpt # 46013
MDR    DMB    Blk # 2517
Sep 29, 2003       10:26 am



LIBER 0 7 6 5 9 FOLIO 0 6 5

## State of Maryland Land Instrument Intake Sheet

[ ] City    [ X ] County: Howard

*Information provided is for the use of the Clerk's Office and State Department of Assessments and Taxation, and the County Finance Office only.*
(Type or Print in Black Ink Only All Copies Must Be Legible)

| 1 | Type(s) of Instruments | 1 Deed | 3 financing | Other | Other |
|---|---|---|---|---|---|
| | | 2 Deed of Trust | 4 assignment | | |

| 2 | Conveyance Check Box | X Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Arms Length [3] | Not an Arms-Length Sale [9] |
|---|---|---|---|---|---|

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | | | |
|---|---|---|---|---|

| 4 | Consideration and Tax Calculations | Purchase Price/Consideration | $ | 106,500.00 | |
|---|---|---|---|---|---|
| | | Any New Mortgage | $ | 126,500.00 | |
| | | Balance of Existing Mortgage | $ | | |
| | | Other: | $ | | |
| | | Other: | $ | | |
| | | Full Cash Value | $ | | |

| 5 | Fees | Recording Charge | $ | 75.00 | $ | 20.00 |
|---|---|---|---|---|---|---|
| | | Surcharge | $ | 20.00 | $ | 20.00 |
| | | State Recordation Tax | $ | 632.50 | $ | |
| | | State Transfer Tax | $ | 532.50 | $ | |
| | | County Transfer Tax | $ | 1,065.00 | $ | |
| | | Other | $ | | $ | |
| | | Other | $ | | $ | |

| 6 | Description of Property | 06 | 512909 | 3294/490 | | |
|---|---|---|---|---|---|---|
| | SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | United american bus. center @ corridor north | U, bldg 2 | | | |
| | | 10630 RIOOS HILL ROAD, UNIT U, JESSUP, MD 20794 | | | | |
| | | | | Description/Amt. of SqFt/Acreage Transferred: | | |
| | | If Partial Conveyance, List Improvements Conveyed: | | | | |

| 7 | Transferred From | D.K. & R COMPANY | MOISTURE PROTECTION TECHNOLOGIES, INC |
|---|---|---|---|

| 8 | Transferred To | MOISTURE PROTECTION TECHNOLOGIES, INC | |
|---|---|---|---|
| | | 10630 RIOOS HILL ROAD, UNIT U, JESSUP, MD 20794 | |

| 9 | Other Names to Be Indexed | | CITIZENS NATIONAL BANK |
|---|---|---|---|

| 10 | Contact/Mail Information | Name: MELISSA DAVIS | X Return to Contact Person |
|---|---|---|---|
| | | Firm: LAKEVIEW TITLE COMPANY | Hold for Pickup |
| | | Address: Suite 600, Merrill Lynch Bldg. 10320 Little Patuxent Parkway Columbia, MD | Return Address Provided |
| | | Phone: | |

| Assessment Information | X Yes [ ] No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | [ ] Yes X No | Does transfer include personal property? If yes, identify: _____ |
| | [ ] Yes X No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

20

# Exhibit D

**United States District Court**
**Baltimore, MD**

United States               :
         Plaintiff        :
                         :     Case #: AW05-cr-0254
v.                       :
                         :
David Kissi              :
         Defendant    :

**Affidavit**

### Federal Judge Peter J. Messitte's and the Money Store Conflict of Interest
### U.S. v. Kissi, Case # AW05-cr-0254

I, Yolanda Gibson-Michaels, am at least 18 years of age, Citizen of the United States,

and that I have a personal knowledge of the assertion I am making here **under Oath** that it is

upon information and belief, when Judge Peter J. Messitte in 2003 summarily ruled against

David Kissi and his spouse, Edith Truvillion, for Pramco, Judge Messitte failed to disclose to

the Kissi's that a Financial conflict-of-interest exists between **Judge Peter J. Messite** and

**the Money Store**.

It is upon information and belief that Judge Peter J. Messite failed to disclose that he

is an investor of **Unregistered Asset Backed Securities** identical to **Unregistered Asset**

**Back Securities** held by **the Money Store**; a named defendant in the above captioned case.

Cannon 3 of a Judiciary code of ethics requires immediate recusal if it's known by the **Judge**

**to have a significant financial interest that could be substantially affected by the**

**proceeding**; or if the Judge is likely to be a ***material witness in the proceeding***. Judge Peter

J. Messite had a duty to recluse himself from summary hearings and rulings against David

Kissi' during the Civil and Criminal proceedings. **(See Exhibit A)**

2)    Based on newly discovered information, I affirm **under Oath**, that the **Money Store** had prior knowledge of its various unregistered asset back securities of unreported Securities Exchange Commission (SEC) Financial filings.  Defendant David Kissi' is one of *75 victims of the Money Store's reported predatory lending and financial fraud*.  The Money Store vicarious predatory lending practices were established under various alias i.e., the *Money Store Home Equity, aka First Union, aka First Union Bank, a division of Wheat First Securities, aka Wachovia, aka First Union Bank.* (See Exhibit B)

3)    I affirm, **under Oath**, based on **newly discovered evidence** a financial conflict-of-interest existed between **Judge Peter J. Messite's** failed to disclose that he is an investor of **PIMCO** alias Pramco, **Primco**, Pramco I, Pramco II LLC, Pramco III, Pramco CV, Pramco IV.

4)    I affirm, **under Oath**, that it is upon information and belief of **newly discovered evidence** Pramco, **Primco**, Pramco I, Pramco II LLC, Pramco III, Pramco CV, Pramco IV etc; failed to disclosed that **Pramco is identified as a limited liability company, organized under the laws of Delaware, with its principal place of business in New York.** See *Pramco, LLC v. San Juan Bay Marina, Inc.,* **435 F.3d 51 (1st Cir. Jan. 19, 2006).**  Courts have ruled that Limited liability companies are unincorporated entities. The citizenship of an unincorporated entity, such as a partnership, is determined by the citizenship of [all] of its members. The Court saw no reason to depart from this well-established rule. [1]/

---

[1]/ See Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir.2004); GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir.2004); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir.2004); Provident Energy Assocs. of Mont. v. Bullington, 77 Fed.Appx. 427, 428 (9th Cir.2003); Homfeld II, L.L.C. v.Comair Holdings, Inc., 53 Fed.Appx. 731, 732-33 (6th Cir.2002); Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir.2000); Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir.1998); see also 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Juris.2d § 3630 (Supp.2005).

2

5)    I affirm, **under Oath**, that it is upon information and belief of **newly discovered evidence** Pramco NV failed to disclosed its identity as a ***Belgium company*** **(Foreign)** address listed at **'t Motje 20, Roeselare, Belgium** also doing business as Pramco, providing Public Relations Services as its true line of business.**(See Exhibit C)**

6)    I affirm, **under Oath**, that it is upon information and belief of **newly discovered evidence** that Judge Messitte was aware of his financial interest, failed to register **unregistered asset backed security holdings** at the time Judge Messitte ruled against Mr. David Kissi as he had prior knowledge of holding unregistered asset back securities at the time he presided both civil and unwarranted criminal proceedings. See ACLU et. al v. National Security Agency, 2006, See No. 99CA2038 *People v. Rivera. Fruits of the* Poison Tree.

7)    I affirm, **under Oath,** that it is upon information and belief of **newly discovered evidence** Judge Messitte had knowledge that he was a **shareholder of unregistered Asset Backed Securities**; and that these securities were similar to the pool of **Asset Backed Securities** held by the Money Store used to pool together funds and loans to borrowers similarly situated like the Kissis. Judge Messitte had a duty to reveal information not provided to David Kissi at trial.

8)    I affirm, **under Oath,** that it is upon information and belief of **newly discovered evidence** that **Judge E. Stephen Derby**, United States Bankruptcy Judge for the District of Maryland had a duty to recuse himself from proceedings over David Kissi case and his spouse, Edith Truvillion in favor of Pramco aka Belgium public relations company.

3

Judge E. Stephen Derby, United States Bankruptcy Judge for the District of Maryland has been named in a Civil Rico case filed against **the Maryland Bankruptcy Court, United States District Court of Maryland**, **Civil Action L-98-3652**, filed **Oct.30,1998** before **Federal Judge Benson Everett Legg**. See **Donald D. Stone** vs. **Robert E. Warfield, Sr. c/o Moore, Warfiled, & Glick Real Estate et.al**. Plaintiff Stone named well over 80 Defendants whom may posed a conflict of interest in David Kissi's case to and including Judge E. Stephen Derby failure to disclose that the **U.S. Maryland Bankruptcy Court** is subject to reported R.I.C.O. violations of the **United States Department of Education involving an estimated $8 million dollars in student loans**.

Plaintiff Stone's assertion that his investigation affirmed that: "*Maryland Federal bankruptcy courts become a haven for Maryland's criminals, but it was also a haven for the criminal element of the Bankruptcy Bar, the Maryland Bar, the Bankruptcy Trustee Program, and the United States Attorney's office in Baltimore, Maryland*. Judge Derby had a duty to determine if any of the named 90 defendants to and including himself posed a 'conflict of interest' of presiding over David Kissi's case. *2/*

---

2/ a) United States Department of Education involving an estimated $8 million in student loans.
b) 2000 documented victims in Maryland and Virginia.
c) The Honorable E. Stephen Derby, Judge, Federal Bankruptcy Court, District of Maryland.
d) The United States Bankruptcy Court, District of Maryland in Baltimore.
e) The creditors of Charles R. Longo bankruptcy, case number 90-5-4907-SD.
f) The creditors of National Training Systems, bankruptcy case number 90-5-4018-SD.
g) The creditors of Shippers Choice, Inc., bankruptcy case number 94-57899.
h) The United States Department of Justice, Trustee Bankruptcy Program.
i) The United States Department of Justice, Inspector General's office, Education Division.

Canon 2 requires a judge to avoid the appearance of impropriety at all times, Canon 5 says a judge should regulate his or her civic and charitable activities so as to avoid the appearance of impropriety. A judge **must disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of recusal, even if the judge believes that there is no real basis for recusal**. (1) A judge shall recuse himself or herself from a proceeding in which the judge's impartiality might reasonably be questioned, including an instance when: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer or extra-judicial knowledge of a disputed evidentiary fact concerning the proceeding; (c) the judge knows that he or she, *individually or as a fiduciary*, or a member of the judge's family, has a *significant financial interest in the subject matter in controversy* or *in a party to the proceeding*; require recusal because of the judge's own sense of propriety. (i) is known to be a party to the proceeding or a director, officer, or trustee of a party; (ii) is known to be acting as a lawyer in the proceeding. Under appropriate circumstances, the fact that the judge's impartiality might reasonably be questioned under Canon 3D(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the proceeding" under Canon 3D(1)(d)(iii), may require the judge's recusal.

**Wherefore**, its upon information and belief that Judge Messitte testimony against David Kissi in his criminal trial in 8/2006 created unethical bias, questionable financial interest of Messite's failure to registered Asset Backed Securities as required by the Maryland Securities Exchange Commission (SEC).

Respectfully Submitted by: _____    7/27/07

Yolanda Gibson-Michaels
Information Specialist, Action Network
2210 Anvil Lane
Temple Hills, MD  20748
(301) 630-5062

Notary:
　　　Subscribed and sworn to before me a Notary Public for the State of _MARYLAND_ and the

County of _Prince George_    My Commission Expires: _May 1st 2010_

Signed by: _____

5

*EXHIBIT A*

SEC Info    Home    Search    My Interests    Help    Sign In    Please Sign In

## "*Peter J. Messitte*"

### *Latest Filing:* 2/20/02 as Signatory

**As:** **Signatory** *(Director, Officer, Attorney, Accountant, Banker, Agent, etc.)*

### List All Filings as Signatory

### Search Recent Filings (as Signatory) for "*Peter J. Messitte*"

### "*Peter J. Messitte*" has been a Signatory for/with the following Registrant:

- Igen International Inc/DE [ formerly Igen Inc/CA ]

*Copyright © 2007 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 06:54:18.0 GMT - Help at SEC Info*

SEC Info    Home    Search    My Interests    Help    Sign In    Please Sign In

## Search

*Search by Name, Industry, Business, SIC Code, Area Code,*
*Topic, CIK, Accession Number, File Number, Date, ZIP, ...*

| peter j messitte | Search |

*(Hints: Use names, not tickers.  Be concise.  Don't punctuate.  One or two words usually works best.)*

## "peter j messitte"

**No Registrants** *(Public Companies / Funds, Significant Individuals / Owners, et al.)*

Try "*pete j messitt*" or simply "*peter*" or "*messitte*".

## No Group Members *(Non-Registrant Filers*: **Partners, Affiliates, et al.)**

**1 Name** *(Directors, Officers, Attorneys, Accountants, Bankers, Agents, et al.)*

### *Last Filing*    *Signatory*

2/20/02    Peter J. Messitte

---

### No Industries *(2/3/4-Digit SIC Codes)*

---

### No Businesses *(5/6-Digit SIC Codes)*

---

| *SEC Info* | **Home** | **Search** | **My Interests** | **Help** | **Sign In** | *Please Sign In* |

---

## "*Peter J. Messitte*"

### *Filings as:* **Signatory**

**1 Filing · <u>Documents containing "Peter *and* J *and* Messitte" with Text matching "Peter *or* J *near* Messitte" *anywhere*</u> in This Filing**

Find | Peter J. Messitte | in | this filing. | Show | docs searched | and | every "hit".
Help... | *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of<br>2/20/02 | Filer<br>**Igen International Inc/DE** | Doc | Filing¹<br><u>8-K{5}</u> | As/For/On<br><u>2/15/02</u> | Docs:Pgs<br>2:16 |

Chism Sharon E/FA

Current Report -- 4 pages                    1: <u>8-K</u>..............

2: <u>EX-99</u>..............

Exhibit 99.1 -- 12 pages

| *EX-99 · <u>1st Page</u> of 12* | | *Just 1st (New)* |

  This action came on for trial before the Court and the Jury,
with the Honorable Peter J. Messitte, United States District Judge, presiding.
The issues having been duly tried, the Jury having duly rendered its verdict,

| | *Just 12th (New)* |
| *EX-99 · <u>12th Page</u> of 12* | |

     DATED THIS 15 DAY OF FEBRUARY, 2002.

                                        /s/ PETER J. MESSITTE
                                        ---------------------
                                        PETER J. MESSITTE
                                        UNITED STATES DISTRICT JUDGE

| ***Find Words in Filing - "<u>Peter J. Messitte</u>" - p. 1*** |
| **2 documents within the filing were searched.** |
| **1 doc contained the words "Peter *and* J *and* Messitte".** |
| **It matched "Peter *or* J *near* Messitte" *anywhere*.** |

2

3 text matches are highlighted above.

*Copyright © 2007 Fran Finnegan & Company All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 06:54:42.0 GMT - Help at SEC Info*

*SEC Info*   **Home**   **Search**   **My Interests**   **Help**   **Sign In**   *Please Sign In*

# For The Period Ended 2/15/02

**364 Filings**  ·  Click on a Filing-Type[1] to view it  ·  List the Documents within these Filings

**Page:**  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  ...  19 · **All** ·
**Bottom**

Find | Peter J. Messitte | in | the p.1 filings below . | Show | filings with "hits" | and | every "hit".
Help...

*Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing[1] | As/For/On | Docs:Pgs |
|---|---|---|---|---|
| 5/31/05 | Avino Silver & Gold Mines Ltd | 6-K | 2/15/02 | 2:3 |
| | Bowne 6-K Express/FA | | 2/16/05 | |
| | Pratt David | 4 | 2/15/02 | 1:3 |
| | Callidus Software Inc | | | |
| | Davis Polk & Ward..01/FA | | 9/23/04 | |
| | Deluca Joseph E | 4 | 2/15/02 | 1:2 |
| | Warwick Valley Telephone Co Bownefile16/FA | | 4/22/03 | |
| | Newmont Mining Corp/DE | 8-K{7} | 2/15/02 | 1:5 |
| | White & Case LLP/FA | | 4/15/03 | |
| | Newmont Mining Corp/DE | 8-K/A{7} | 2/15/02 | 6:547 |
| | Donnelley Rr Fi..Svcs/FA | | | |
| 3/28/03 | Structured Products Corp | 8-K/A{7} | 2/15/02 | 1:3 |
| | Orrick Herringto..LLP/FA | | 3/26/03 | |
| | Chapleau Resources Ltd. | CA IFS | 2/15/02 | 1:1 |
| 3/14/03 | Asset Backed Securities Corp | 8-K/A{5,7} | 2/15/02 | 1:5 |
| | First Secu..Reporting/FA | | 3/14/03 | |
| | Asset Backed Securities Corp | 8-K{5,7} | 2/15/02 | 1:3 |
| | First Secu..Reporting/FA | | | |
| 2/18/03 | Nidec Corp | 6-K | 2/15/02 | 1:14 |
| 1/23/03 | Iannuzzi Frank | 3 | Owner | 1:2 |
| | Epic Financial Corp | Langis Pantelis C/FA | | |
| 1/23/03 | Rolfe Garth | 3 | Owner | 1:2 |
| | Epic Financial Corp | Langis Pantelis C/FA | | |
| 10/10/02 | Mid America Apartment Commun..Inc | 8-K/A{9} | 2/15/02 | 1:14 |
| 7/30/02 | Asset Backed Securities Corp | 8-K{5,7} | 2/15/02 | 1:3 |
| | First Secu..Reporting/FA | | 7/01/02 | |

3

| | | | |
|---|---|---|---|
| **Asset Backed Securities Corp**<br>First Secu..Reporting/FA | 8-K{5,7} | 2/15/02 | 1:3 |
| 6/17/02  Deboer Laurie<br>Caddo Enterprises Inc | **4**<br>Edgar/Tech Fili..Svcs/FA | Other | 1:4 |
| 6/17/02  Henry Garry<br>Caddo Enterprises Inc | **4**<br>Edgar/Tech Fili..Svcs/FA | Other | 1:4 |
| 6/10/02  Crested Corp<br>Adamson Sharon R/FA | 8-K{5} | 2/15/02 | 2:17 |
| 5/30/02  Nat'l Medical Health Card Sy..Inc<br>5/24/02 | 8-K{5} | 2/15/02 | 1:2 |
| **Asset Backed Securities Corp**<br>First Secu..Reporting/FA | 8-K{5,7} | 2/15/02 | 1:3 |

---

[1] Filing-Type descriptions:

| | |
|---|---|
| 3 | Initial Statement of Beneficial Ownership of Securities – Form 3. |
| 4 | Statement of Change in Beneficial Ownership of Securities – Form 4. |
| 6-K | Report of a Foreign Private Issuer – Form 6-K. |
| 8-K | Current Report – Form 8-K { *Post-8/23/04...* Section 1: Business & Operations; 2: Financial Info.; 3: Securities & Trading; 4: Accountants & Accounting; 5: Governance & Management; 6: ABS; 7: Reg. FD; 8: Events; 9: Financials – *Pre-8/23/04...* Item 1: Control; 2: Assets; 3: Bankruptcy; 4: Accountants; 5: Events; 6: Resignations; 7: Financials; 8: Year; 9: Reg. FD; 10: Ethics; 11: Suspension; 12: Results }. |
| CA IFS | Interim Financial Statements. |
| /A | Amendment to or Amended version of a previous filing of this type. |

*Page:*  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  ...  19 · **All** · **Top**

---

*Copyright © 2007 Fran Finnegan & Company All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 06:55:51.2 GMT - Help at SEC Info*

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

---

# Asset Backed Securities Corp · 8-K/A · For 2/15/02

### Filed On 3/14/03 12:01pm ET  ·  SEC File 0-14811  ·
### Accession Number 1019965-3-279

| Find | Peter J. Messitte | in | this filing. | Show | docs searched | and | every "hit". |
|---|---|---|---|---|---|---|---|

| Help... | *Wildcards:*  **?** (any letter), ***** (many).  *Logic:* for Docs:  **&** (**and**),  **|** (**or**); for Text:  **|** (**anywhere**), "**(&)**" (near). |
|---|---|

| **As Of**<br>Docs:Pgs | **Filer**<br>Issuer | **Filing**<br>Agent | **As/For/On** | |
|---|---|---|---|---|
| 3/14/03  **Asset Backed Securities Corp**<br>First Secu..Reporting/FA | | 8-K/A{5,7} | 2/15/02 | 1:5 |

4

## Amendment to Current Report · Form 8-K
### Filing Table of Contents

| Document/Exhibit | Pages | Size | Description |
|---|---|---|---|
| 1: 8-K/A | 5: | 21K | Abac02he10202B% |

## Document Table of Contents

| Page | (sequential) | (alphabetic) | Top |
|---|---|---|---|
| 1 | 1st Page | | |
| " | Item 7. Monthly Statements and Exhibits Exhibit No | • Alternative Formats (RTF, XML, et al.) | |
| | | • Monthly Statements and Exhibits Exhibit No | |

---

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C.  20549

FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (date of earliest event reported):  15-Feb-02

Asset Backed Securities Corporation Mortgage-Backed Pass-
Through Certificates
Series 2002-HE1
(Exact name of registrant as specified in its charter)

Delaware                333-44300              13-3354848
(State or Other Jurisdiction (Commission    (I.R.S. Employer
of Incorporation) File Number)     Identification No.)

11 Madison Avenue, Park Avenue Plaza
New York, New York
10010
(Address of Principal Executive Offices) (Zip Code)

Registrant's telephone number, including area code:  (212) 325-1811
Item 5. Other Events

On February 15, 2002 a scheduled distribution was made from the
Trust to holders of the Certificates.  The Trustee has caused to be
filed with the Commission, the Monthly Report dated  15-Feb-02

5

The Monthly Report is filed pursuant to and in accordance with
(1) numerous no-action letters (2) current Commission policy
in the area.

A.   Monthly Report Information
See Exhibit No.1

B.   Have and deficiencies occurred?  NO.
Date:
Amount:

C.   Item 1: Legal Proceedings:  NONE

D.   Item 2: Changes in Securities:  NONE

E.   Item 4: Submission of Matters to a Vote of
Certificateholders:  NONE

  F.   Item 5: Other Information - Form 10-Q, PartII - Items 1,2,4,5
if applicable:  NOT APPLICABLE

Item 7. Monthly Statements and Exhibits
Exhibit No.

1.)     Monthly Distribution Report Dated          15-Feb-02

Asset Backed Securities Corporation Mortgage-Backed Pass-Through
Certificates
                       Series 2002-HE1

               STATEMENT TO CERTIFICATEHOLDERS

          Distribution Date:   **February 15, 2002**

               DISTRIBUTION SUMMARY

| Class | Face Value | Beg | Prin | Rate |
|-------|-----------|-----|------|------|
| | | Int | | |
| A-1 | 235258000.00 | 235258000.00 | 4881188.33 | 2.25000% |
| | | 235258.00 | | |
| A-2 | 543742000.00 | 543742000.00 | 1788265.80 | 2.21000% |
| | | 534075.48 | | |
| A-IO | 233000000.00 | 233000000.00 | 0.00 | 6.50000% |
| | | 1262083.33 | | |
| M-1 | 66500000.00 | 66500000.00 | 0.00 | 2.93000% |
| | | 86597.78 | | |
| M-2 | 54625000.00 | 54625000.00 | 0.00 | 3.48000% |
| | | 84486.67 | | |
| B | 49875000.00 | 49875000.00 | 0.00 | 4.48000% |
| | | 99306.67 | | |
| P | 100.00 | 100.00 | 100.00 | 0.00 |
| | | 42107.35 | | |
| X | 0.00 | 0.00 | 0.00 | 0.00000% |
| | | 0.00 | | |
| R | 0.00 | 0.00 | 0.00 | 0.00000% |
| | | 0.00 | | |

6

```
        BIO     31500000.00           31500000.00        0.00      6.00000%
                                      157500.00
                Total 950000000.00        950000000.00    6669454.13
                                     2343915.28
```

| Class | Loss | Int Shortfall | End |
|-------|------|---------------|-----|
| A-1 | N/A | 0.00 | 230376811.67 |
| A-2 | N/A | 0.00 | 541953734.20 |
| A-IO | N/A | 0.00 | 233000000.00 |
| M-1 | 0.00 | 0.00 | 66500000.00 |
| M-2 | 0.00 | 0.00 | 54625000.00 |
| B | 0.00 | 0.00 | 49875000.00 |
| P | .00 | 0.00 | 100.00 |
| X | 0.00 | 0.00 | 0.00 |
| R | 0.00 | 0.00 | 0.00 |
| BIO | 0.00 | 0.00 | 31500000.00 |

### AMOUNTS PER $1,000 UNIT

| Class | Cusip | Prin | Int | Loss | End |
|-------|-------|------|-----|------|-----|
| A-1 | 04541GCD2 | 20.74823526 | 1.00000000 | 0.00000000 | |
| | | 979.25176474 | | | |
| A-2 | 04541GCE0 | 3.28881308 | 0.98222223 | 0.00000000 | |
| | | 996.71118692 | | | |
| A-IO | 04541GCF7 | 0.00000000 | 5.41666665 | 0.00000000 | |
| | | 1000.00000000 | | | |
| M-1 | 04541GCG5 | 0.00000000 | 1.30222226 | 0.00000000 | |
| | | 1000.00000000 | | | |
| M-2 | 04541GCH3 | 0.00000000 | 1.54666673 | 0.00000000 | |
| | | 1000.00000000 | | | |
| B | 04541GCJ9 | 0.00000000 | 1.99111118 | 0.00000000 | |
| | | 1000.00000000 | | | |
| P | 04541GCL4 | 0.00000000 | 421073.5000 | 0.00000000 | |
| | | 1000.00000000 | | | |
| X | 04541GCK6 | 0.00000000 | 0.00000000 | 0.00000000 | |
| | | 0.00000000 | | | |
| R | 04541GCM2 | 0.00000000 | 0.00000000 | 0.00000000 | |
| | | 0.00000000 | | | |
| BIO | 04541GCN0 | 0.00000000 | 5.00000000 | 0.00000000 | |
| | | 1000.00000000 | | | |

```
Prin Dist:
Beg Bal                               797,976,995.40
Sched Prin                             509,302.26
Prep                                 6,110,125.21
Curt                                    50,026.66
Net Liq Proceeds                             0.00
Loan Purchase Prices                         0.00
Tot Prin Remittance                  6,669,454.13
Pre-Funding Amt Dist as Prin                 0.00
Tot Prin Dist                        6,669,454.13
Net Real Losses                              0.00

End Bal                               791,307,541.27
End Overcoll Amt                             0.00

Num of Liq  Loans                            0.00
```

7

```
Int Dist:                                          5,763,744.21
Sched Int-Curr Per-Net of Serv Fee                         0.00
Capitalized Intt Acct W/D                                  0.00
Less Relief Act Interest Shortfall
                                      5,763,744.21

                                                     332,490.98
Servicing Fee                                      1,027,326.54
Advances

                                                           0.00
Agg P&I  Adv

Mortg Loans Out               Count                        5896
                 Bal                 791,307,541.27

                                                           0.00
Bal of Subsequent loans

                                                           0.00
Remain Amt in Pre Funding Acct


WAM
347
WAC
9.16752%
```

| Delinq Info | | Fairbanks | | Long Beach | |
| Count | Balance | Count | Balance | | |
|---|---|---|---|---|---|
| 30-59 | 14 | 1,819,264.34 | 61 | 4,393,767.76 | |
| 60-89 | 0 | 0.00 | 3 | 220,593.39 | |
| 90+ | 0 | 0.00 | 1 | | |
| 156,762.50 | | | | | |
| Total | | | | | |

*Note:  The above statistics do not include loans in
foreclosure or bankruptcy proceedings or REO properties.

| Foreclosures | | |
|---|---|---|
| Count | Balance | |
| Fairbank | 0 | 0.00 |
| Long Beach | 21 | 2,108,716.09 |

| Bankruptcies | | |
|---|---|---|
| Count | Balance | |
| Fairbank | 0 | 0 |
| Long Beach | 19 | 1,450,170 |

| REOs | | |
|---|---|---|
| Count | Balance | |
| Fairbank | 0 | 0 |
| Long Beach | 0 | 0 |

Interest Shortfall

| Total | | Losses | Prep Int Shortfall | Relief Act Int Short | |
|---|---|---|---|---|---|
| | A-1 | 0.00 | 0.00 | 0.00 | 0.00 |
| | A-2 | 0.00 | 0.00 | 0.00 | 0.00 |
| | A-IO | 0.00 | 0.00 | 0.00 | 0.00 |
| | M-1 | 0.00 | 0.00 | 0.00 | 0.00 |
| | M-2 | 0.00 | 0.00 | 0.00 | 0.00 |

8

| | | | | |
|---|---|---|---|---|
| B | 0.00 | 0.00 | 0.00 | 0.00 |
| X | 0.00 | 0.00 | 0.00 | 0.00 |
| BIO | 0.00 | 0.00 | 0.00 | 0.00 |

Amount of Prep Prem   42,107.35

Real Losses incurred during the related Prep   0.00

Bankruptcy Losses   0.00

Cum Net Real Losses since Startup   0.00

Agg Amt of Prep Int Shortfalls   0.00

Agg Amt of Relief Act Int Shortfalls   0.00

Req Overcoll Amt   14,250,002.00

Credit Enhancement %   2.398169%

Overcoll Inc Amt   0.00

Overcoll Red Amt   0.00

Pmt from Yield Maint Agreement   0.00

Amt on Dep in Pre-Funding acct   152,022.05

Net Monthly Excess CF   3,095,832.11
Extra Ordinary Trust Fund Exp   0.00

Trigger Event Occurance   NO

## SIGNATURES

Pursuant to the requirements of the Securities
Exchange Act of 1934, the registrant has duly caused this
report to be signed on its behalf by the undersigned
thereunto duly authorized.

Asset Backed Securities Corporation Mortgage-Backed Pass-Through
Certificates
Series 2002-HE1

By: /s/ Sheryl Christopherson
Name: Sheryl Christopherson
Title: Vice President
US Bank, NA

## Dates Referenced Herein *and* Documents Incorporated By Reference

| *This 8-K/A Filing* | *Date* | *Other Filings* |
|---|---|---|
| For The Period Ended | 2/15/02 | 8-K |
| Filed On / Filed As Of | 3/14/03 | 8-K/A, 8-K |

Top                    List All Filings

---

*Alternative Formats:*  Rich Text / Word (.rtf), Text (.txt), EDGAR (.sgml), XML (.xml), et al.

---

*Copyright © 2007 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 07:01:07.0 GMT - Help at SEC Info*

---

**SEC Info**   Home   **Search**   **My Interests**   **Help**   Sign In   Please Sign In

---

# Filings re: Registrant(s) of '8-K/A' Filing 1019965-3-279

**303 Filings** • Click on a Filing-Type¹ to view it   List the Documents within these Filings

*Page:*  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16 · All ·
**Bottom**

| Find | Peter J. Messitte | in | the p.1 filings below . | Show | filings with "hits" | and | every "hit". |

Help...  *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing¹ | As/For/On | Docs:Pgs |
|---|---|---|---|---|
| ▼ 6/04/07 1:364 | ▼ Asset Backed Securities Corp | ▼ 424B5 Nelson McKee/FA | ▲ | |
| | Asset Backed Securities CORP Home Equity Loan Tru..AMQ 2007-HE2 | | | |
| 2/06/07 1:406 | Asset Backed Securities..2007-He1 | 424B5 Nelson McKee/FA | | |
| | Asset Backed Securities Corp | | | |
| 12/01/06 1:391 | Asset Backed Securities Corp | 424B5 Nelson McKee/FA | | |
| | Asset Backed Securities CORP Home Equity Loan Trust/S..2006-HE7 | | | |
| 12/01/06 1:443 | Asset Backed Securities Corp | 424B5 Nelson McKee/FA | | |
| | Asset Backed Securities CORP Home Equity Loan Trus..MO 2006-HE6 | | | |
| 7/17/06 2:4 | Asset Backed Securities Corp | 8-K/A{8,9} Nelson McKee/FA | 5/09/06 | |
| 4/28/06 1:324 | Home Equity Mortgage Trust 2006-2 | 424B5 Doremus Fin..Printing/FA | | |
| | Asset Backed Securities Corp | | | |
| 4/26/06 3:135 | Asset Backed Securities Corp | 8-K{8,9} Thacher Proffitt..LLP/FA | 4/25/06 | |
| 4/21/06 2:127 | Asset Backed Securities Corp | 8-K/A{8,9} Nelson McKee/FA | 4/21/06 | |

10

| | | | |
|---|---|---|---|
| 4/03/06<br>1:6 | Asset Backed Securities Corp | S-3/A<br>Nelson McKee/FA | |
| 3/29/06<br>39:1234 | Asset Backed Securities Corp | 8-K{8,9}<br>Nelson McKee/FA | 3/28/06 |
| 3/24/06<br>3:3781 | Asset Backed Securities Corp | 8-K{8,9}<br>Nelson McKee/FA | 3/24/06 |
| 3/15/06<br>4:620 | Asset Backed Securities Corp | S-3/A<br>Nelson McKee/FA | 3/14/06 |
| 2/06/06<br>2:4 | Asset Backed Securities Corp | 8-K{8,9}<br>Nelson McKee/FA | 2/02/06 |
| 2/02/06<br>1:340 | Asset Backed Securities Corp | FWP<br>Nelson McKee/FA | |
| 2/01/06<br>3:37 | Asset Backed Securities Corp | 8-K{8,9}<br>Nelson McKee/FA | 2/01/06 |

¹ **Filing-Type descriptions:**

**424B5**   Prospectus – Rule 424(b)(5).

**8-K**   Current Report – Form 8-K { *Post-8/23/04...* Section 1: Business & Operations;
2: Financial Info.; 3: Securities & Trading; 4: Accountants & Accounting;
5: Governance & Management; 6: ABS; 7: Reg. FD; 8: Events; 9: Financials –
*Pre-8/23/04...* Item 1: Control; 2: Assets; 3: Bankruptcy; 4: Accountants;
5: Events; 6: Resignations; 7: Financials; 8: Year; 9: Reg. FD; 10: Ethics;
11: Suspension; 12: Results }.

**FWP**   Free Writing Prospectus – Rule 163/433.

**S-3**   Registration Statement for Securities Offered Pursuant to a Transaction –
Form S-3.

**/A**   Amendment to or Amended version of a previous filing of this type.

*Page:*   1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16 · **All** · **Top**

*Copyright © 2007 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 07:06:02.3*

11

herein. The ratings of the Class A Certificates do not address the likelihood of the payment of any Certificateholders' Interest Carryover. The MBIA Policies relating to the Certificates in each Pool do not guarantee payment of any such amount.

**DELINQUENCIES AND DEFAULTS**      As of          , 1999, the following percentages of Loans were delinquent for the following periods (the percentages below refer to the percentage of the aggregate principal balance of the Loans):

were not classified as Loans that have been liquidated ("LIQUIDATED LOANS"), (2) were not in foreclosure and (3) the Trustee had not acquired title to the properties securing the Loan in foreclosure or by deed in lieu of foreclosure.

The amount of Loans that are delinquent changes from month-to-month. There can be no assurance that the amount of delinquent Loans will not increase from the levels described above.

time are more likely to become Liquidated Loans than Loans that are delinquent for a shorter period of time. The larger the aggregate principal balance of Loans that become Liquidated Loans is, the more likely it is that available amounts of credit enhancement will be used to cover losses realized on those Liquidated Loans. Any use of available credit enhancement reduces the amount of credit enhancement available thereafter.

---

**ACQUIRED MORTGAGED PROPERTIES**      As of          , 1999, the Trust included          % (by aggregate principal balance) of Loans with respect to which the Trustee had acquired title to the properties securing such Loans in foreclosure or by deed in lieu of foreclosure ("REO PROPERTIES"). REO Property may include properties that the Trustee can sell. If the Trustee sells REO Property, the proceeds of the sale (less expenses incurred in the sale) become available for distribution to Certificateholders.

*Peter J. Messite Certificate holder of unregistered Asset Backed Securities*

*(See Ex A) Pgs. 3-10*

The Servicer can give no assurance that any REO Property will be sold for an amount that will result in net proceeds being available for distribution to the Certificateholders.

**YEAR 2000**      The Servicer, the Trustee and the Auction Agent utilize a significant number of computer software

third parties. These include programs and systems of their suppliers, customers, brokers and agents,

*12*

the telephone, electric and utility companies, as
well as others. If any computer system relied upon
by the Servicer, the Trustee and the Auction Agent
or any third party has software applications and
contains source codes that are unable to
appropriately interpret the upcoming calendar year
2000, some level of modification or replacement of
such applications or hardware will be necessary.
The year 2000 issue is the result of prior computer
programs being written using two digits, rather
than four digits, to define the applicable year.
Any of the Servicer's or the Trustee's computer
programs that have time-sensitive software may
recognize a date using "00" as the year 1900 rather
than the year 2000. Any such occurrence could
result in a major computer system failure or
miscalculations. Several federal regulatory
agencies, including the Securities and Exchange
Commission, require the entities that they regulate
to take steps to address problems which may arise
in relation to the year 2000.

DTC (as defined herein) has informed its
participants and other members of the financial
community (the "INDUSTRY") that it believes that it
has developed and is implementing a program so that
its computer hardware and software systems, as the
same relate to the timely payment of distributions
(including principal and income payments) to

including but not limited to issuers and their
agents, as well as third-party vendors on whom DTC
relies for information or the provision of
services, including telecommunication and
electrical utility service providers, among others.
DTC has informed the Industry that it is contacting
(and will continue to contact) third party vendors
from whom DTC acquires services to: (1) impress
upon them the importance of such services being
Year 2000 compliant; and (2) determine the extent
of their efforts for Year 2000 remediation (and, as
appropriate, testing) of their services. In
addition, DTC is in the process of developing such
contingency plans as it deems appropriate.

According to DTC, the foregoing information with
respect to DTC has been provided to the Industry
for information purposes only and is not intended

modification of any kind.

The Servicer, the Trustee and the Auction Agent
currently are assessing the impact of modifications
or replacements required to adjust for the year
2000. The Servicer, the Trustee and the Auction
Agent are utilizing both internal and external

13

Amount" herein)) the yield will be increased on Class A Certificates purchased by such investor at a price less than par (i.e., the principal balance of a Class A Certificate at the time of its purchase). Similarly, if prepayments of principal are received on the Loans at a rate greater than that assumed by an investor, the yield will be decreased on Class A Certificates purchased at a price greater than par. The effect on an investor's yield of principal prepayments on the Loans occurring at a rate that is faster (or slower) than the rate anticipated by the investor in the period immediately following the issuance of the applicable Class of Class A Certificates may not be offset by a subsequent like reduction (or increase) in the rate of principal payments. The weighted average lives of the Class A Certificates will also be affected by the amount and timing of delinquencies and defaults on the Loans in the related Pool and the liquidations of defaulted Loans, respectively. Delinquencies and defaults will generally slow the rate of payment of principal to the Class A Certificateholders since (i) neither the Servicer nor MBIA is obligated to advance for delinquent payments of principal and (ii) certain payments due under the MBIA Policies referred to herein as "INSURED PAYMENTS" (see "The MBIA Policies and MBIA" herein) with respect to principal generally are not required until the occurrence of a Subordination Deficit (as defined under "Description of the Certificates -- Cross-Support Provisions and Spread Amount" herein). However, this effect will be offset to the extent that lump sum recoveries on defaulted Loans and foreclosed Mortgaged Properties result in principal payments on the Loans faster than otherwise scheduled.

As described herein, certain Classes of Certificates in a Pool will be entitled to receive payments of principal prior to other Classes of Certificates in the related Pool. As a result, the Classes of Certificates in a Pool receiving payments of principal first will immediately be affected by the prepayment rate on the Loans in the related Pool. However, the timing of commencement of principal distributions and the weighted average lives of each Class of Class A Certificates will be affected by the prepayment rate experienced both before and after the commencement of principal distributions on any such Class.

The Loans are either (i) "simple interest" or (ii) "actuarial method" loans. If a payment is received on a Loan which is a "simple interest" loan later than scheduled, a smaller portion of such payment will be applied to principal and a greater portion will be applied to interest than would have been the case had the payment been received on the scheduled due date, resulting in such Loan having a longer weighted average life than would have been the case had the payment been made as scheduled. Conversely, if a payment on a Loan is received earlier than scheduled, more of such payment will be applied to principal and less to interest than would have been the case had the payment been received on its scheduled due date, resulting in such Loan having a shorter weighted average life than would have been the case had the payment been made as scheduled.

In the event that less than 30 days' interest is collected on a Loan during a Due Period, whether due to prepayment in full or a principal payment that is in excess of five times the scheduled monthly payment due, but which was not intended by the Mortgagor to satisfy the Loan in full or to cure a delinquency (a "CURTAILMENT"), the Servicer is obligated to pay certain amounts referred to herein as "COMPENSATING INTEREST" (see "The Pooling and Servicing Agreement -- Monthly Advances and Compensating Interest" herein) with respect thereto, but only to the extent of the aggregate servicing fee and contingency fee to which the Servicer is entitled under the Pooling and Servicing Agreement

14

*ExHiBiT B*

*SEC Info*   Home   Search   My Interests   Help   Sign In   *Please Sign In*

# Search

*Search by Name, Industry, Business, SIC Code, Area Code,*
*Topic, CIK, Accession Number, File Number, Date, ZIP, ...*

| the money store | Search |

*(Hints: Use names, not tickers. Be concise. Don't punctuate. One or two words usually works best.)*

## "the money store"

---

### No Registrants  *(Public Companies / Funds, Significant Individuals / Owners, et al.)*

Try "**th mone stor**" or simply "**the**" or "**store**".

---

### No Group Members  *(Non-Registrant Filers:  Partners, Affiliates, et al.)*

### 1 Name  *(Directors, Officers, Attorneys, Accountants, Bankers, Agents, et al.)*

| *Last Filing* | *Signatory* |
|---|---|
| 1/20/99 | The Money Store Inc. |

### No Industries  *(2/3/4-Digit SIC Codes)*

---

### No Businesses  *(5/6-Digit SIC Codes)*

SEC Info    Home    Search    My Interests    Help    Sign In    *Please Sign In*

## *"The Money Store Inc."*

### *Latest Filing:  1/20/99 as Signatory*

**As:  Signatory**  *(Director, Officer, Attorney, Accountant, Banker, Agent, etc.)*

*1*

**<u>List All Filings as Signatory</u>**

**<u>Search Recent Filings (as Signatory) for "*The Money Store Inc.*"</u>**

**"*The Money Store Inc.*" has been a Signatory for/with the following Registrant:**

- **Money Store Asset Backed Certificates Series 1997-B**

---

*Copyright © 2007 Fran Finnegan & Company  All Rights Reserved.*
*www.secinfo.com - Tue, 5 Jun 2007 06:24:46.0 GMT - Help at SEC Info*

**SEC Info**   Home   Search   My Interests   Help   Sign In   *Please Sign In*

---

# "*The Money Store Inc.*"

**Filings as:** Signatory

**1 Filing  ·  <u>Documents containing "The *and* Money *and* Store *and* Inc"</u>
<u>with Text matching "The *or* Money *or* Store *or* Inc" anywhere</u> in This
Filing**

---

| Find | The Money Store Inc. | in | this filing. | ▼ | Show | docs searched | ▼ | and | every "hit". | ▼ |

Help... *Wildcards:* **?** (any letter), **\*** (many). *Logic:* for Docs: **&** (and), **|** (or); for Text: **|** (anywhere), "(&)" (near).

| As Of | Filer | Doc Filing¹ | As/For/On Docs:Pgs |
|-------|-------|-------------|--------------------|
| 1/20/99 | Money Store Asset Backed...1997-B S-3 | | |
| 4:189 | | | Bowne of Atlanta Inc/FA |
| | | | 1: S-3................. |

The Money Store S-3 -- 182 pages

*1st Page* of 182 | | *Just 1s*

As Filed with the Securities and Exchange Commission on January 20, 1999
Registration Statement No. 333-

---

REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933
--------------------
THE MONEY STORE HOME EQUITY TRUST 1997-B
(Exact Name of Registrant as Specified in its Charter)

---

ROBERT J. HAHN, ESQ.                    BRUCE HURWITZ, ESQ.
KILPATRICK STOCKTON LLP                 THE MONEY STORE INC.
ONE FIRST UNION CENTER, SUITE 3500          707 THIRD STREET

2

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO PUBLIC:  As soon as practicable after this Registration Statement becomes effective.

If the only securities being registered on this Form are being offered pursuant to dividend or interest reinvestment plans, please check the following box. [ ]

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. [X]

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

If delivery of the prospectus is expected to be made pursuant to Rule 434, please check the following box. [ ]

---

re Home Equity Asset Backed
s, Series 1997-B..........          (1)                (1)                (1)

(1) This Registration Statement pertains to offers and sales of previously-registered asset-backed securities of The Money Store Home Equity Trust 1997-B related to market-making transactions in such securities by any affiliate of The Money Store Inc., the sponsor of the Registrant, including First Union Capital Markets, a division of Wheat First Securities, Inc.

(2) Because registration fees with respect to these asset backed-securities of The Money Store Home Equity Trust 1997-B were paid previously in connection with the registration of the initial offering of such securities to the public, no fee is due in connection with the registration of market-making transactions in such securities.

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE SECURITIES ACT OF 1933 OR UNTIL THIS REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(A), MAY DETERMINE.

*2nd Page of 182*                                                          *Just 2n*

THE INFORMATION IN THIS PROSPECTUS IS NOT COMPLETE AND MAY BE CHANGED. WE MAY NOT SELL THESE SECURITIES UNTIL THE REGISTRATION STATEMENT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION IS EFFECTIVE. THIS PROSPECTUS IS NOT AN OFFER TO SELL THESE SECURITIES AND IT IS NOT SOLICITING AN OFFER TO BUY THESE SECURITIES IN ANY STATE WHERE THE OFFER OR SALE IS NOT PERMITTED.

MARKET-MAKING PROSPECTUS

THE MONEY STORE HOME EQUITY TRUST 1997-B

---

This Prospectus relates to offers and sales of

3

YOU SHOULD CONSIDER CAREFULLY THE RISK FACTORS BEGINNING ON PAGE 7 HEREIN AND ON PAGE 73 OF ANNEX IV HERETO.

Neither the certificates to which this Prospectus relates nor the underlying loans are insured or guaranteed by any governmental agency or instrumentality.

The certificates to which this Prospectus relates represent interests in The Money Store Home Equity Trust 1997-B only and, except for the certificate guaranty insurance policies of MBIA Insurance Corporation, do not represent interests in or obligations of The Money Store Inc., First Union Capital Markets, a division of Wheat First Securities, Inc., First Union National Bank, First Union

previously-registered classes of The Money Store Home Equity Asset Backed Certificates, Series 1997-B, related to market-making transactions by (1) First Union Capital Markets, a division of Wheat First Securities, Inc., an affiliate of The Money Store Inc., or (2) any other affiliate of The Money Store Inc. The Money Store Inc. sponsored The Money Store Home Equity Trust 1997-B. The Money Store Home Equity Trust 1997-B initially offered and sold the certificates in June 1997 pursuant to a registration statement of The Money Store Inc. and certain of its wholly-owned subsidiaries.

First Union Capital Markets, and any other affiliate of The Money Store Inc. that may engage in market-making transactions in the certificates to which this Prospectus relates, (1) may act as principal or agent in any market-making transactions in the certificates to which this Prospectus relates, (2) will make any sale of such certificates at prices related to prevailing market prices of such certificates at the time of such sale or otherwise and (3) may use this Prospectus when required under the federal securities laws in connection with offers and sales of such certificates related to such market-making transactions. The Money Store Home Equity Trust 1997-B will not receive any proceeds from any market-making transactions in the certificates.

First Union Capital Markets currently expects to make a secondary market in the certificates to which this Prospectus relates, but has no obligation to do so. There

outstanding.

THE PRIMARY ASSETS OF THE MONEY STORE HOME EQUITY TRUST 1997-B CONSIST OF:

- Pool I consists of fixed interest rate one- to four-family, and certain five-to six-family, residential first and second mortgage loans. As of          , 1999, the loans in Pool I had an aggregate principal balance of

- Pool II consists of one- to four-family residential first mortgage loans with adjustable interest rates. As of          , 1999, the loans in Pool II had an aggregate principal balance of $          .
- Pool III consists of fixed interest rate five or more unit residential or mixed-use residential and commercial first mortgage loans. As of          , 1999, the loans in Pool III had an aggregate principal balance of $          .

THE CERTIFICATES TO WHICH THIS PROSPECTUS RELATES CONSIST OF:

Nine classes of Class A Certificates--
- The Class A-3 through A-8 Certificates generally represent the right to receive payments distributable on or with respect to the loans in Pool I.
- The Class A-9 and A-10 Certificates generally represent the right to receive payments distributable on or with respect to the loans in Pool II.

4

- The Class A-11 Certificates, represent the right to receive payments distributable on or with respect to the loans in Pool III.

The table on page 6 under "Summary -- Offered Certificates" lists the Class A Certificates to which this Prospectus relates.

Due to the cross-support provisions described herein, the holders of each class of Class A Certificates may receive cash as credit support from any loan in any

MBIA Insurance Corporation has issued certificate guaranty insurance policies with respect to the Class A Certificates.
----------------------
NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED OF THESE SECURITIES OR DETERMINED THAT THIS PROSPECTUS IS ACCURATE OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**3rd Page of 182**                                                  *Just 3r*

Use of Proceeds............................................... 11
Lending Programs............................................. 11
The Representatives and the Originators...................... 11
The Loan Pools............................................... 12
Maturity, Prepayment and Yield Considerations............... 16
Description of the Certificates............................. 18
The MBIA Policies and MBIA.................................. 29
The Pooling and Servicing Agreement......................... 33
Federal Income Tax Considerations........................... 39

Experts..................................................... 43
Legal Matters............................................... 43
Rating of the Class A Certificates.......................... 44
Where You Can Find More Information......................... 44

**4th Page of 182**                                                 *Just 4t*

Prepayment Considerations................................... 77
The Status of the Mortgage Loans in the Event of
    Bankruptcy of the Representative or an Originator...... 78
Limitations on Interest Payments and Foreclosures......... 78
Security Rating........................................... 79
The Trusts.................................................. 80
The Representative and the Originators...................... 93
The Single Family Loan Lending Program...................... 94
Description of the Securities............................... 97
Credit Enhancement......................................... 105
Maturity, Prepayment and Yield Considerations.............. 110
The Agreements............................................. 112
Certain Legal Aspects of the Mortgage Loans................ 122
Federal Income Tax Consequences............................ 131

**5th Page of 182**                                                 *Just 5t*

Annex IV to this document provides general information, some of which may not apply to your Certificates. With certain exceptions, Annex IV to this document constitutes the Prospectus, dated September 28, 1998, of The Money Store Inc. (and certain of its wholly-owned subsidiaries) relating to initial offerings of securities, including securities similar to the Certificates to

5

**From** Yolanda Gibson-Michaels <ygmichaels@yahoo.com>
  **Date** 2007/06/25 Mon AM 03:25:40 EDT
    **To** KissiLawRefbyKennedy <agdlawyer@aol.com>,T Michael Kennedy <tmichael@justicefortexans.com>
    **CC** "yakima.suppliesKissi" <yakima.supplies@verizon.net>
**Subject** pramco alias, doing business as (DBA), pramco II, pramco II, Pramco NV7, Pramco Not Register

(Note: As a Whistleblower, I also assist 911 groups, hawkscafe, action groups, etc. The first listing affirm Pramco
acting in its aka **"public relations compacity"**which is separate and apart from the Kissi's case.) Read further re
Pramco's various alias that is affiliated with the Kissi's case.

## August 2004 - GA Telesis Announces Receives Hubair Inventory Under Remarketing Agreement

Ft. Lauderdale, FL - GA Telesis Turbine Technologies, LLC announced that it has entered into an
agreement with <u>Pramco II</u> to remarket an inventory of over 25,000 rotable components
previously owned by Hubair. The Inventory consists of parts for Boeing 727, 737, 747,
757, 767, Airbus A300, A310 and A320. The parts will be remarketed by their Aircraft
Systems Group **and** Turbine Engine Group **respectively.**

GA Telesis has fast become a global leader in the commercial jet engine leasing and component
distribution sectors of the airline industry. As a major supplier of commercial jet engines for lease
and replacement parts for both commercial turbine engines and commercial aircraft, GA Telesis has
amassed an inventory of lease engines covering CFM International, General Electric, International
Aero Engine, Pratt & Whitney and Rolls-Royce and Airbus, Boeing, Bombardier and Douglas aircraft
models. In addition, GA Telesis☐ Aircraft Systems Group and Turbine Engine Group each maintain
one of the world☐s most comprehensive inventories of aircraft and jet engine components for the
major aircraft and engine manufacturers.

Excerpt of this case below and others related to Pramco is "Key" Defendants/Appellees may be called as witnesses
on behalf of the David Kissi.

No. 04-1410

PRAMCO, LLC, ON BEHALF OF CFSC CONSORTIUM, LLC,

Plaintiff, Appellant,

v.

SAN JUAN BAY MARINA, INC., EDUARDO FERRER-BOLIVAR,
ORIENTAL PLAZA, INC., TOP SUITE, INC.,
VILLA MARINA YACHT HARBOUR, INC.,

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jesús A. Castellanos, <u>U.S. Magistrate Judge</u>]

_____

Before

Boudin, <u>Chief Judge</u>,
Lipez, <u>Circuit Judge</u>,

and Schwarzer, ℘
Of the Northern District of California, sitting bydesignation.

Close Senior District Judge.

Don't see the company you are looking for? Try an advanced search.
Looking for your own company and it is not listed? You may need to Get a D-U-N-S number.

| < Previous | Showing 1 of 1 | Sort by: Relevance | Next > |
|---|---|---|---|

HQ  PRAMCO, INC                                          3137 Lackland Rd, Fort Worth, TX

     PRAMCO INC                                          511 E John Carpenter Fwy Ste 150, Irving, TX

BR  PRAMCO, INC                                          3939 Boat Club Rd, Fort Worth, TX

     Pramco Inc.                                          19 Eagle Lane, Wrentham, MA

     PRAMCO INC                                          3148 14th Ave N, Fort Dodge, IA

     PRAMCO INC                                          26950 Ne Bell Rd, Newberg, OR

     PRAMCO, INC                                          6542 Boca Raton Blvd, Fort Worth, TX

     PRAMCO, INC                                          406 Highway 156, Justin, TX

     Polymer Research And Manufacturing Company,
     Inc                                                  5401 S Graham Rd, Saint Charles, MI
     Also Trades As: Pramco Inc

     PRAMCO II LLC                                        200 Cross Keys Off Pk, Fairport, NY

PRAMCO CV7 (alias)

June 21, 2007Back to Top

| | |
|---|---|
| Case Name | PRAMCO CV7, LLC v JAMES N. RAVER, JR., ET AL |
| Case No. | 05-CI-1296 |
| Sale Date | June 21, 2007 RESET FROM December 21, 2006 |
| Property Address | 10135 Dixie Highway Florence, KY 41042 |
| Appraised At: | $170,000.00 LA $1,139,410.48 |
| Taxes Check | Subject to 2007 taxes |
| Additional Info | Hon. Dennis R. Williams Phone:394-6200 Fax:291-7902 |

| | |
|---|---|
| Case Name | PRAMCO IV, LLC v HAROLD L. BROCK, TRUSTEE, ET AL |
| Case No. | 06-CI-2289 |
| Sale Date | June 14, 2007 |
| Property Address | 6642 East Bend Road Burlington, KY 41005 |
| Appraised At: | $325,000.00 LA $754,483.37 |
| Taxes Check | Subject to 2007 taxes |
| Additional Info | Hon. Jeffrey M. Hendricks Phone:513-629-2786 Fax:513-651-3836 |

Victim of Pramco Case (Note: Pramco's Representative Atty. Whitney Mosby is a partner
of the law firm of SettlePou (aka former outside counsel law firm of FDIC). SettlePou list
Pramco, among other firms as a "Financial Institution or Lender" client the law firm of SettlePou
has represented. You may visit the SettlePou website at: http://www.settlepou.com

Pramco acting as a "Lender" In the case of Paul Lawing Jr. (you have a copy) provided that Wachovia sold the
loans
to Pramco, the company that started the foreclosure proceedings. Pramco then sued Cue Investments, Lawing and
his wife.
{Pramco sued the Lawings because they guaranteed the loans}. In the suit, Pramco is asking for more than
$1million
the amount owed on the loans. (Note: PRAMCO DID NOT GUARANTEE DAVID KISSI'S LOAN. THUS, BY
WHAT
AUTHORITY OR STANDING DID PRAMCO (AKA BELGIUM, OTHER ALIAS) HAVE TO FILE A LIEN AGAINST
DAVID KISSI? DAVID KISSI LOAN WAS GUARNATEED BY THE SBA; NOT PRAMCO.)

Published: February 20, 2007 11:47 pm

Golf club sold at auction

Highest bidder plans to use property as a golf course

### By JOHN DEMPSEY

Tribune business writer

A Lafayette man submitted the winning bid for Green Acres Golf Club during Tuesday∟s auction conducted by the
U.S. Marshal Service.

Scott Lods bid $370,000 for the nearly 158 acres of land, buildings and equipment during the sale in the Howard
County Courthouse.

∟I∟m personally purchasing it,∟ Lods said afterward. ∟I plan to open it as a golf course and make it nice for the
people who live there.∟

Lods will take ownership after Southern District Court Judge John Tinder signs the order. That takes approximately
60 days, according to Brian Aldridge, of the Indianapolis office of the Marshal Service.

Lods found out the golf course would be auctioned off after hearing about the problems with the sewer operations at
the subdivision.

While he has no experience running a golf course, Lods isn∟t going into this completely blind.

∟I don∟t [have experience], but my family does in Chicago,∟ he explained.

Aldridge conducted the sale. Before he started, he noted to the crowd of 20 ∟ most of whom were Green Acres
residents or club members ∟ that ∟We rarely do private sales.∟

Payment was required to be made to the clerk of the Southern District of Indiana in Indianapolis by cash, certified or
cashier∟s check or by money order.

The auction was to satisfy Judge Tinder∟s order in the lawsuit by Pramco III LLC against Jay Max Enterprises,
doing business as Green Acres Golf Club, and James Clark, the former owner.

Pramco held Jay Max Enterprise∟s mortgage from First National Bank & Trust.

Tinder ruled Jan. 8 that the property be sold to satisfy back property taxes owed Howard County, $314,845.89 owed
Pramco for its mortgage and attorney fees. Any money left after those debts would go to satisfy Jay Max
Enterprise∟s loans from the U.S. Small Business Administration.

On Feb. 12, Pramco paid the Howard County Treasurer $36,618.03 in delinquent property taxes.

The only other bid came from Pramco⌐s representative, Whitney Mosby, an attorney from the Indianapolis firm of Bingham & McHale. She put in a protective bid of $367,442 for the company.

The only equipment not included in the auction were golf carts, which were leased from Yamaha and have already been removed from the property.

John Dempsey may be contacted at (765) 854-6739 or by e-mail at john.dempsey@kokomotribune.com

Pramco also dba (doing business as a cleaners) according to Hoover Report at
http://www.hoovers.com/free/search

### D&B Basic Matches

| Refine Results by [State/Province ▼] | Location | Location Type | D&B Reports |
|---|---|---|---|
| Pramco Ii Llc | Fairport, NY | Single | Buy Report |
| Pramco, Inc (dba "Pramco Cleaners") | Fort Worth, TX | Branch | Buy Report |
| Results 1-2 of 2 | | | |

## A Pramco is listed in INDIA too.

⌐  **PRAMCO ( K.R. KHAN )**
EDUCATIONAL MATERIAL INCLUDING BOOKS, ENCYCLOPEDIA, MULTIMEDIA PROGRAMMES, SCHOOL
BOOKS ETC. CONSUMER ITEMS, **GIFT** ITEMS, PERFUMES, ETC.
**Address :** M-1, LAJPAT NAGAR-III,, NEW DELHI, Delhi

Yolanda C. Gibson-Michaels☺



WIELSBEKE
421.680.180
JAARREKENING 31.12.2002, GGK 27.05.2003  REF.BNB : 03213-4916-012
2003-06-23 - 78286

**FRAMCO**, NV
ROESELARE
444.315.230
JAARREKENING 31.12.2002, GGK 13.05.2003  REF.BNB : 03213-4928-014
2003-06-23 - 78287

**METALLISATIE DEBLAUWE**, BVBA
KUURNE
433.324.239
JAARREKENING 31.12.2002, GGK 31.05.2003  REF.BNB : 03213-4942-016
2003-06-23 - 78288

**DERUYTER**, BVBA
MENEN
447.826.729
JAARREKENING 31.12.2002, GGK 15.05.2003  REF.BNB : 03213-4958-015
2003-06-23 - 78289

# Exhibit E

At The 4th Circuit Court of Appeals
Richmond, VA 23219

David Kissi,          Appellant          :
                                         :
                                         :
                                         :     4th Circuit Case #: 07-4916
v.                                       :     U.S. District Case #: AW05-cr-0254
                                         :
United States,        Appellee           :
                                         :

### Affidavit # 3
### Showing U.S. Attorney Rod Rosenstein Committed Obstruction of Justice in Case # AW05-cr-0254

That I, Edith R. Truvillion, am at least 18 years of age and that I do have a firsthand full knowledge of this case because I am the spouse of Appellant, David Kissi. And I assert under oath that after David Kissi was convicted on 8/4/06 and while shopping around for a new attorney to file a post-conviction motion for a new trial, U.S. Attorney Rod Rosenstein issued a bulletin per the FBI website that asserts that my spouse had committed such egregious crimes that he is eligible for a 40 year jail sentence. See p.2. This bulletin from my reasoning was calculated to influence the court to impose a harsh sentence on David. And even after the government saw that its jail-time estimate was grossly inflated, it still maintains this irresponsible and libelous information on the Internet. Thus, U.S. Attorney Rosenstein's conduct not only maliciously sought to ruin us financially, but his actions have scared off other lawyers from representing David. And it is a violation of his 4th, 6th, 8th and 14th Amendment Rights.

Thus, in the eyes of the law this amounts to obstruction of justice and Judge Joseph R. Goodwin's 30 month sentence imposed on David should be dismissed or at least David should be given a new trial.

Respectfully Submitted by: _____

Edith R. Truvillion, Affiant
PO Box 77878
One Massachusetts Ave, NE
Washington, DC 20013
202-675-6365

### Certificate of Service

That on this 21st day of November 2007, I did mail per U.S. Postmaster a copy of this Affidavit to Assistant U.S. Attorney Barbara Sale at 36 S. Charles St., Baltimore, MD 21201 and Attorney Aaron G. Durden at 10 W. Monument Ave, Dayton, OH 45402.

_Edith R. Truvillion_

Edith R. Truvillion

**Notary:**
Subscribed and sworn to before me a Notary Public for the State of _D.C._ and the

~~County~~ of DISTRICT OF COLUMBIA .    My Commission Expires: _4/14/2012_

Signed by: _[signature]_



# Department of Justice

United States Attorney
District of Maryland

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney | 36 S. Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201-2692 | 410-209-4800<br>TTY/TDD:410-962-4462<br>410-209-4885 |
| Vickie E. LeDuc<br>Public Information Officer | | FAX 410-962-3091<br>Vickie.LeDuc@usdoj.gov |

**August 4, 2006**
**FOR IMMEDIATE RELEASE**

**CONTACT AUSA VICKIE E. LEDUC OR**
**MARCIA MURPHY AT 410-209-4885**

### BELTSVILLE MAN CONVICTED OF BANKRUPTCY FRAUD AND OBSTRUCTION OF JUSTICE

BALTIMORE, Maryland - A federal jury convicted David Kissi, age 57, of Beltsville, Maryland, today of two counts of bankruptcy fraud, three counts of obstruction of justice and two counts of criminal contempt of court, all arising from years of bankruptcy and civil proceedings, announced United States Attorney for the District of Maryland Rod J. Rosenstein.

Mr .Rosenstein stated, "We will not allow a person to defraud his lawful creditors and attempt to interfere with the orderly working of the courts. The public must know that the rules apply to everyone, and that court orders must be followed."

According to evidence introduced at trial, Kissi declared Chapter 11 bankruptcy on behalf of his company, DK&R, in 2000, but instead of following the rules governing bankruptcy proceedings, he diverted assets and sought by various means to keep from paying his creditors. He threatened both a bankruptcy judge and the trustee who was appointed to oversee the liquidation of DK&R's assets, and filed countless frivolous and vexatious lawsuits against people who were involved one way or another in the litigation, in the hope of avoiding having to pay his just debts. When Judge Peter J. Messitte of the United States District Court in Greenbelt, Maryland entered a Preliminary Injunction in 2003 to stop Kissi from filing these lawsuits, Kissi disregarded the court's order.

Kissi faces a maximum sentence of 40 years in prison followed by 3 years of supervised release for the bankruptcy fraud and obstruction of justice charges. U.S. District Judge Joseph R.Good win scheduled sentencing for October 26, 2006, at 1:30 p.m. Judge Goodwin is a visiting federal judge from the Southern District of West Virginia, who presided over the case in lieu of a Maryland federal judge, because other federal judges from the District of Maryland were witnesses in the case.

United States Attorney Rod J. Rosenstein praised the investigative work performed by the Federal Bureau of Investigation, and thanked Assistant U.S. Attorneys Jonathan Biran and Barbara Sale, who are prosecuting the case.

FBI Home Page        Baltimore Home Page        Baltimore Press Releases        Privacy Policy

# Exhibit F

At the U.S. District Court of Northern Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue, Cleveland, Ohio 44113-1830
Phone:  (216) 357-7000

David Kissi,
Ammendale Trust, et al          Plaintiffs          :
v.                                                  :
Pramco II, LLC,                 Defendant           :          Case #: 4:08cv-00893SL
                                                    :

**Affidavit**
In Opposition to Emil Hirsch's Pro Hac Vice Application Before Ohio Federal Court

That I, David Kissi, am at least 18 years of age and I do have a first hand knowledge of this case because I and my spouse and business entity, DK&R, and Ammendale Living Trust have been and are the victims of Emil Hirsch's rip off of virtually all our assets and that I make the following assertions under oath:

That I oppose his Pro Hac Vice application for he falsely claims that he is currently in goodstanding in D.C. and Maryland, whereas he, his fellow associate James Ryan and their law firm of O'Connor and Hann of D.C. are now under U.S. Government investigation for possible criminal and civil sanctions for money laundering, attempt to bribe judges, tax evasion and suborning of perjury. The government investigation agencies are the IRS, the Attorneys Generals of various states (Ohio included), the FBI and the U.S. Postal Service .  There may be others the public doesn't know about yet.

That the above Opposition is supported by documents and correspondence which Plaintiff has received as a result of his cooperation in providing certain valuable information to the government.  This is information the government previously didn't have, but could lead to the prosecution of several individuals. See pp. 4-5 letters from the FBI.  Also, see pp. 6-8r our former attorney Paul R. Kramer's findings of the extent of the misdemeanors and the willful suborning of perjury by Emil Hirsch and an adverse comment of same by federal Bankruptcy Judge Paul Mannes of Greenbelt, MD.

That while the law deems a person innocent until found guilty, Hirsch's failure to disclose to this court upfront, the above, makes a compelling case for this court to hold in abeyance his Pro Hac Vice application until all the above issues are resolved in Maryland and other jurisdictions.

That the Plaintiff further argues that Hirsch as an officer of the court, ironically has no respect for the court and willfully disobeys court orders.  For example, in 12/2003 Hirsch disobeyed a verbal order of Federal Judge Peter J. Messitte of Greenbelt to ungarnish my spouse's pay check.  He ignored the verbal order and kept garnishing her check such that our monthly income was greatly reduced and

1

we couldn't pay our utility and medical bills.  That Hirsch in 8/2003 did put false liens on the real estate of our Ammendale Living Trust at a time when his client Pramco had no security interest in the Trust. See pp. 6-7 for attorney Paul Kramer's comments on Hirsch's misconduct which warrants sanctions, but that Judge Peter J. Messitte overlooked.

That in 4/2004 Hirsch suborned perjury when he induced his process server to lie before Judge Messitte's courtroom that the process server had served my spouse, Edith Truvillion, with a subpoena on her job and she allegedly ignored it.  Under oath, the process server claimed he served the subpoena to my wife.  However, she was not at work that day, 4/1/04, but rather both of us were in her lawyer Ronald Schwartz's office discussing the case in a conference call with other lawyers we had retained at that time.  Schwartz testified under oath to same.  But despite this, Judge Messitte's bias against us led him to threaten her for disobeying a subpoena and he ordered Hirsch to produce affidavit(s) from individuals at my wife's employer that were involved when the process server claimed to have given her the subpoena.  Hirsch never produced this information and Judge Messitte never brought the incident up again, nor did he sanction Hirsch or the process server.  See pp. 15-43 extract of transcript in Case #: PJM03-2241 dated 4/5/04.  In fact, at that same hearing on 4/5/04, Judge Messitte overlooked the false liens that Hirsch had put on our Trust properties because he had not at that point granted Hirsch permission to do so.  And then Judge Messitte busted our Ammendale Living Trust on that very same day.

That Hirsch, not content with getting a free pass from Judge Messitte, helped his fellow associate, James Ryan,  at the law firm of O'Connor and Hannan in D.C. to disobey a similar court order of Bankruptcy Judge E. Stephen Derby of Baltimore who had barred Ryan from his courtroom for Ryan wasn't "in good standing".  Federal Court Clerk Felicia Cannon of Greenbelt, MD also did bar Ryan in 2008.  See pp. 9-11 for said court orders.  Then when the D.C. Bar investigated our complaint against Ryan's new conduct, he demurred saying he was barely involved in Pramco's litigating us.  Hirsch somehow continued to sneak Ryan into Judge Messitte's courtroom to litigate Pramco's claims against us.  Judge Messitte once again overlooked their trangressions since he was more interested to order virtually all our assets worth $3 million liquidated to satisfy Pramco's fraudulent claims of about $855,000 for our business estate debt it had purchased for only $50,000.  See pp. 12-14 - SBA notes. After paying off Pramco, Judge Messitte, Emil Hirsch and James Ryan teamed up and had me falsely convicted and thrown into jail and nearly deported me.

That James Ryan, Hirsch's associate, got so brazenly disrespectful of the courts such that at my sentencing on 8/10/07 for the above matters of which Hirsch had criminalized to gain unfair advantage,

2

Ryan showed up and offered to explain to the judge per Rod Rosenstein, U.S. Attorney for Maryland's submission that he did a substantial portion of the work to seize our assets and that the $855,000 judgment they and Pramco had collected wasn't enough and that Judge Joseph R.Goodwin, the sentencing judge should grant them an extra sum of $300,000 disguised as a restitution. Fortunately, Judge Goodwin saw no merit in the demand and denied the bid. But Ryan and Hirsch and their law firm of O'Connon and Hannan should be sanctioned for their various crimes in the case of Pramco v. David Kissi et al from 2003 -2008.

In conclusion, having shown by 'prima facie' evidence that Emil Hirsch has been less than honest when he hid from this court in his application for Pro Hac Vice, that he, James Ryan and O'Connor and Hann are now subject to possible criminal and civil sanctions, it will be prudent for this court to temporarily deny Hirsch's application since he is unethical and is applying in bad faith and until all civil and criminal sanctions that can possibly emerge from the various investigations are fully resolved.

Respectfully Submitted by:_____

David Kissi, Plaintiff
#38348037
Federal Satellite Low Elkton
PO Box 10
Lisbon, OH  44432

### Certificate of Service

That on this day of  5/13/08, I , David Kissi, the Affiant did cause the U.S. Postmaster to mail a copy of this Opposition to Emil Hirsch c/o: James Ryan, O'Connor and Hannan, 1666 K St., NW, Suite 500, Washington, DC 20036.

_____
David Kissi

Notary:

Subscribed and sworn to before me a Notary Public for the State of _____ and the

County of _____.    My Commission Expires: _____

"AUTHORIZED BY THE ACT OF JULY 27, 1955.    Signed by: _____
TO ADMINISTER OATHS (18 USC 4004)".

CORRECTIONAL TREATMENT SPECIALIST

DATE  5/13/08

3



4.)

**U.S. Department of Justice**

**Federal Bureau of Investigation**

In Reply, Please Refer to
File No.

April 18, 2005

David Kissi
324 Pennsylvania Avenue
Washington, D.C., 20003

Dear Mr. Kissi:

I am writing in response to your March 19, 2005, letter addressed to the Federal Bureau of Investigation (FBI) concerning allegations of wrongdoing in connection to your involvement with a Chapter 7 Bankruptcy matter.

In order for the FBI to initiate an investigation of any complaint we receive, specific facts must be present to indicate that a violation of federal law within our investigative jurisdiction has occurred. The information you provided may relate to a matter within our jurisdiction.

It is the procedure of the units at FBI Headquarters to refer matters within our investigative jurisdiction to the closest Field Office in the area where the allegations of wrongdoing occurred. It is noted that in your March 19, 2005, letter that you sent a copy to the Calverton, Maryland FBI Office, which is part of the Baltimore Field Division.

The FBI's Baltimore Field Division is the office who would review your complaint for appropriate action. If you have additional information, please contact that office directly at 7142 Ambassador Road, Baltimore, Maryland 21244.

Sincerely yours,

Patricia M. Ferrick
Unit Chief
Public Corruption/Governmental Fraud



4



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D. C. 20535-0001

**June 2, 2005**

David Kissi
324 Pennsylvania Avenue
Washington, D.C., 20003

Dear Mr. Kissi:

I am writing in response to the packet of information you addressed to the Federal Bureau of Investigation (FBI), concerning allegations of wrongdoing in connection to your involvement with a Chapter 7 Bankruptcy matter.

In order for the FBI to initiate an investigation of any complaint we receive, specific facts must be present to indicate that a violation of federal law within our investigative jurisdiction has occurred. The information you provided may relate to a matter within our investigative jurisdiction. Therefore, your communication is being referred to our Calverton, Maryland Office which is part of our Baltimore Field Division.

The FBI's Baltimore Field Division is the office who would review your complaint for appropriate action. If you have additional information, please contact that office directly at 7142 Ambassador Road, Baltimore, Maryland 21244.

Sincerely yours,

Daniel D. O'Brien
Unit Chief
Public Corruption/Governmental Fraud





**PAUL R. KRAMER, P.A.**
ATTORNEY AT LAW
ADMITTED MARYLAND AND D. C.

33

JEFFERSON BUILDING
101 NORTH CHARLES STREET, SUITE 700
BALTIMORE, MARYLAND 21201
(410) 727-0731
FAX (410) 727-4116

June 11, 2004

Christopher B. Mead, Esquire
London & Mead
1225 19 St., N.W.
Washington, DC 20036

RE:    United States v. Davis Kissi and Edith Truvillion Kissi
       Criminal No.: 03-CR-473 (PJM)

Dear Mr. Mead:

I am enclosing, for your information, correspondence between Joseph Bruce (one of the attorneys representing the Kissis in the civil aspects of this case) and Emil Hirsch. What is shocking to me is what the Kissis have been telling me has turned out to be true. That is, there was a lien placed on their property which was dismissed by the Court over a year ago, but has yet to be removed by Pramco and their attorneys. I believe this may be what prompted Mr. Kissi to file an objection to that lien in Prince George's County (subject of the so-called second set of contempt charges). This further explains Mr. Kissi's and Mrs. Truvillion's frustration and supports their argument that Pramco had repeatedly acted in bad faith and taken advantage of this situation.

I bring this to your attention to explain why Mr. Kissi has tried so hard, apparently (at times) against Court Order, to protect what he believed was being taken from him unlawfully.

34

Christopher B. Mead, Esquire
June 11, 2004
Page 2


I would like to discuss postponing the June 22, 2004, sentencing. That date was set in expectation that the entire loan would be paid off by that time. The settlement date has now been moved to July, 2004. In addition, Mr. Kiss's psychiatrist would like to testify on his behalf and he will not be available on that date. I believe the psychiatrists testimony will help to explain Mr. Kiss's behavior to the Court. Accordingly, I ask you to agree to a short postponement for the above reasons.

Please contact me upon review of these letters.

Very truly yours,

Paul R. Kramer

PRK/erc
Enclosures:

Bruce's letter of June 9, 2004, to Hirsch
Bruce's letter of June 9, 2004, to Judge Messitte
Hirsch's letter of June 10, 2004, to Bruce
Hirsch's letter of June 10, 2004, to Judge Messitte
Bruce's letter of June 10, 2004, to Judge Messitte



**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**DISTRICT OF MARYLAND**

32

MANNES
DGE

January 25, 2005

U. S. Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770
(301) 344-8018

Honorable James F. Schneider
Chief Judge, U.S. Bankruptcy Court
101 W. Lombard Street
Baltimore, Maryland 21201

Dear Chief Judge Schneider:                    RE:    EMIL HIRSCH

　　The enclosed correspondence from David Kissi, Trustee, was mailed to me.  Apparently Mr. Kissi believed that I was still the Chief Judge, "US Court.".

　　In view of the very serious nature of the allegations of misconduct as to Mr. Hirsch, such as, extortion and subornation of perjury, I am forwarding the material to you for such action as you may deem appropriate.

Very truly yours,

*Paul Mannes*

PAUL MANNES

cc:
David Kissi, Trustee  ✓
Emil Hirsch, Esq.



January 05, 2008
ORDERED



E. STEPHEN DERBY
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

In Re:                                    *
                                          *
DK & R COMPANY,                           *       Case No. 00-6-1147-SD
                                          *       Chapter 7
                                          *
Debtor.                                   *

## ORDER ON RECONSIDERATION VACATING ORDER
## GRANTING MOTION FOR JAMES P. RYAN TO
## APPEAR PRO HAC VICE WITHOUT PREJUDICE

David Kissi, an interested party, has moved for reconsideration of the Order Granting Motion for

James P. Ryan, Esquire of Virginia to appear pro hac vice in this case as co-counsel for Pramco II, LLC.

The motion will be granted, without prejudice to a new request, because the motion to appear pro hac vice

did not comply with the requirements of Local Bankruptcy Rules 9010-3(b)(2) and (b)(3) as a matter of

law. The moving attorney, Maria Ellena Chavez-Ruark, Esquire, a member of the bar of the United States

District Court for the District of Maryland, has not entered her appearance as co-counsel for Pramco II,

LLC, and indeed she could not without creating a conflict of interest because she and her firm represent

P. 355, 348



the Chapter 7 Trustee herein. Further, the form of motion for pro hac vice admission that is required by the Local Bankruptcy Rule 9010-3(b)(3), which is designed to avoid such a conflict, was not used.

Therefore, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Order Granting Motion for Admission Pro Hac Vice of James P. Ryan, dated December 13, 2004, is VACATED, without prejudice.

cc:    Maria Ellena Chavez-Ruark, Esquire
       James P. Ryan, Esquire
       Mr. David Kissi
       U.S. Trustee

**End of Order**

068916    10812069054013





# UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
## DISTRICT OF MARYLAND

Felicia C. Cannon, Clerk

Frances E. Kessler, Chief Deputy                                      Reply to Southern Division Address
Lisa Rosenthal, Chief Deputy

October 11, 2005

James P. Ryan
O'Connor & Hannan, LLP
1666 K Street NW Ste 500
Washington, DC 20006

RE:    Kissi, et al vs. Hirsch, et al
       PJM-05-2781

Dear Counsel:

The above-captioned case has been removed from the Circuit Court for Prince George's County,
Maryland and assigned the case number above. The case: [ X ] is [  ] is not subject to this
Court's electronic filing requirements and procedures. Our records show that:

[ X ]   You are not a member in good standing of our bar. Your appearance has not been entered
        in this case and the Court will not send you copies of orders and other documents. Within
        ten (10) days from the date of this letter you must notify the chambers of the presiding
        judge whether you will be seeking admission or if another attorney will be entering an
        appearance. For information on how to become a member of our bar or to appear *pro hac
        vice*, please visit our web site at: www.mdd.uscourts.gov. If you were previously a
        member and have a question about your status you may contact one of our attorney
        admission specialists: Catherine Scaffidi at (301) 344-3220 or Tina Stavrou at (410) 962-
        3552. Once you have been admitted, you should register to use CM/ECF.

[  ]    You are not a registered CM/ECF user. To register, go to the Court's web site:
        www.mdd.uscourts.gov and fill in the on-line registration form. Information about
        electronic filing procedures and requirements is available on the web site. Please note
        that if this case is subject to electronic filing, any documents submitted for filing in paper
        format may be returned to you. The Court does not mail paper copies of orders and other
        documents which are filed electronically.

Sincerely yours,
        /s/

Felicia C. Cannon, Clerk

cc:    √ All counsel/parties

---

Northern Division • 4415 U.S. Courthouse • 101 W. Lombard Street • Baltimore, Maryland 21201• 410-962-2600
Southern Division • 240 U.S. Courthouse • 6500 Cherrywood Lane • Greenbelt, Maryland 20770 • 301-344-0660

Visit the U.S. District Court's Web Site at www.mdd.uscourts.gov





**U.S. SMALL BUSINESS ADMINISTRATION**
WASHINGTON, DC 20416

August 24, 2005

Mr. David Kissi
DK&R
325 Pennsylvania Avenue, S.E.
Washington, DC 20003

Dear Mr. Kissi:

This responds to your letter of July 14, 2005, regarding your request for information pertaining to "each individual monthly payment for our company DK&R's two Money Store loan #70743130 and #55366330 and the same information applicable for our Key Bank loan #92182730," under the Freedom of Information Act.

The following is responsive to your request. Upon receipt of your request we contacted the SBA Denver Finance Center (DFC) and requested a transcript of account for each loan listed. The DFC responded that the Money Store loans were lender serviced accounts and that the SBA could not provide transcripts of payment activities as the lender would have been the servicer of record. Any transcript would need to be obtained by contacting the servicing company. The Key Bank loan was an SBA serviced loan and the transcript is provided showing activity up to the point the loan was sold on August 7, 2001 to Pramco II.

Should you deem this reply unsatisfactory, you have the right to appeal this decision to the Chief, Freedom of Information/Privacy Acts Office, Small Business Administration, 409 Third Street, SW, Suite 5900, Washington, DC 20416. You must submit an appeal within 45 calendar days of the date of the notice of denial. The appeal should contain a description of the information requested, the name and title of the SBA official or employee who denied the request, the reason for the denial, and other pertinent facts you deem appropriate.

Sincerely,

Richard C. Blewett
Director, National Guaranty Purchase Center





**TRANSCRIPT OF ACCOUNT**

**SBA** U.S. Small Business Administration
Upland, CA 91779

NOTE: DK&R COMPANY

| LOAN NUMBER | INTEREST RATE | SERVICING OFFICE | DATE |
|---|---|---|---|
| 92 1 827380-03 | 11.250% | 0470 | 22-Jul-05 |

| TRANSACTION DATE | INTEREST DAYS | DISBURSE/OR (REFUND) | REMITTANCE | APPLICATION OF REMITTANCE | | | | PRINCIPAL | BALANCES | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | PRINCIPAL | INTEREST | ACCRL. INTR. | PURCH. INTR. | | ACCRL. INTR. | PURCH. INTR. |
| 10/30/98 | | $102,685.50 | | | | | | 102,685.50 | $0.00 | $19,464.53 |
| 07/07/99 | 250 | 80.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 102,765.50 | 7,912.41 | 19,464.53 |
| 07/13/01 | 737 | Asset Sale-Cut Off | $0.00 | $0.00 | 0.00 | 0.00 | 0.00 | 102,765.50 | 31,256.37 | 19,464.53 |
| TOTALS | | $102,765.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | |

LISTED ABOVE IS A TRANSCRIPT OF ACCOUNT AS OF THE DATES INDICATED, TAKEN FROM THE RECORDS OF THIS AGENCY.

AUTHORIZED SIGNATURE _____    DATE _____

SBA FORM 468 (04-85) REF 20 221

**U.S. SMALL BUSINESS ADMINISTRATION**
WASHINGTON, DC 20416

May 24, 2004

Mr. David Kissi
DK&R
4305 Ammendale Road.
Beltville, MD 20705

Dear Mr. Kissi:

This responds to your letter of May 18, 2004, regarding questions related to the sale of your U.S. Small Business Administration loans in Asset Sales #3 and #4, under the Freedom of Information Act.

The following is responsive to your request. The SBA sold SBA #70743130 and #55366330 in Asset Sale #3 on December 5, 2000 in pool AC210 to Latte Stone, LLC. They made an "all or nothing" bid of $278,384,879 for 29 pools of loans containing 6,389 loans with an aggregate Unpaid Principal Balance of $569,843,808. On August 7, 2001, the SBA sold #92182730 in Pool AD003 to Framco II. The pool was comprised of 65 loans with an Unpaid Principal Balance of $8,850,551. The winning bid was $2,686,000. As stated previously, the SBA accepted one bid for the 9 pools comprising Block 1 (101-115) and Block 2 (201-214) and individual loan or pool prices are not available. All sales are cash to the Agency.

Should you deem this reply unsatisfactory, you have the right to appeal this decision to the Chief, Freedom of Information /Privacy Acts Office, Small Business Administration, 409 Third Street, SW, Suite 5900, Washington, DC 20416. You must submit an appeal within 45 calendar days of the date of the notice of denial. The appeal should contain a description of the information requested, the num~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ request, the reason for the denial, and other pertinent facts you deem appropriate.

Sincerely,

Richard C. Blewett
Director, Asset Sales

| | DKTR LOAN # | AMOUNT FRAMCO PAID FOR THE LOT | VALUE OF LOT | PERCENT ASKING BID | AVERAGE AMOUNT FRAMCO PAID PER LOAN |
|---|---|---|---|---|---|
| # | 70743130 | $278,384,879 | $569,843,808 | 48% | $435.7 |
| # | 55366330 | 278,384,879 | 569,843,808 | 48% | 4,357 |
| # | 92182730 | 2,686,000 | 8,850,551 | 30% | 41,323 |

12/5/00

8/7/01

RENT TO FRAMCO: $705,000
JUDGMENT IS 14 TIMES THE
~~~ FRAMCO PAID:

TOTAL PAID BY = $50,037
FRAMCO FOR DKTR'S
~~~~~~~~~

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION


PRAMCO II, LLC

      PLAINTIFF

  VS.                  CIVIL NO. PJM-03-2241

DAVID KISSI, et al.,

      DEFENDANTS

                        Greenbelt, Maryland

                        April 5, 2004


    The above-entitled case came on for a motions

hearing before the Honorable Peter J. Messitte, United

States District Judge


               A P P E A R A N C E S


For the Plaintiff:

    Emil Hirsch, Esquire
    James Ryan, Esquire


Gail A. Simpkins, RPR
Official Court Reporter

2

1    <u>For Defendant David Kissi:</u>

2        David Kissi, Pro Se

3

4    <u>For Defendant Edith Truvillion Kissi:</u>

5        Ronald Lee Schwartz, Esquire

6    <u>For Ammendale Living Trust and Co-Trustees:</u>

7        Stanley Alpert, Esquire
     Joseph F. Bruce, Esquire

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



114

1        The subpoena, Your Honor, had one paragraph,

2    very short several lines, duces tecum, where I asked

3    both Mr. and Mrs. Kissi to bring in certain documents

4    which relate to how they assembled the sum of money,

5    the 95,000 that was paid at the settlement.

6        THE COURT:  Well, call them to the stand and ask

7    them about it.

8        MR. HIRSCH:  I will.  I call Mrs. Kissi to the

9    stand.

10        THE COURT:  All right.

11        MR. SCHWARTZ:  Your Honor, I have to object and

12    move to quash the subpoena.

13        THE COURT:  Why?

14        MR. SCHWARTZ:  Because she wasn't served with

15    it.  The subpoena says that she was served April 1st

16    at 10:50.

17        THE COURT:  Do you have your process server

18    here?

19        MR. HIRSCH:  Yes, he is here.

20        THE COURT:  Call him first.

21        MR. HIRSCH:  Okay.  Your Honor, may I retrieve

22    from you the exhibit that came out of my original

23    exhibit book, which is the private process server's

24    return on Mrs. Kissi?  I believe I handed it to the

25    Court.  I think it has a sticker number 21.

(17)

115

1        THE COURT:  Right, here.

2        MR. HIRSCH:  Thank you.  I just want to put it

3    back in the book.

4        THE COURT:  All right.  Swear the witness,

5    please.

6        THE CLERK:  Sir, please raise your right hand.

7                 MARSHALL PARSONS, JR.

8    a witness called on behalf of the Plaintiff, having

9    been previously duly sworn, was examined and testified

10   as follows:

11       THE CLERK:  Please have a seat on the witness

12   stand.

13       MR. HIRSCH:  Your Honor, can I have the Court's

14   indulgence so I can give Mr. Alpert the exhibit?

15       Your Honor, would you like to have one of my

16   extra copies of the exhibit to follow the testimony?

17       THE COURT:  All right.  Bring it up.

18       THE CLERK:  Sir, please speak directly into the

19   microphone.  State your name and spell your name.

20       THE WITNESS:  Marshall Parsons, Jr., P A R S O N S.

21                 DIRECT EXAMINATION

22   BY MR. HIRSCH:

23   Q       Mr. Parsons, what is your occupation, sir?

24   A       Process server.

25   Q       Who are you employed by?

116

1    A      Capitol Process Services.

2    Q      How long have you been engaged in the occupation

3    or the business of being a private process server,

4    sir?

5    A      Six and a half years.

6    Q      Now direct your attention to April 1st of this

7    year, last week, sir.  Did there come a time when your

8    employer directed you to serve a subpoena issued by

9    this Court to Edith Truvillion Kissi?

10   A      Yes.

11   Q      I ask you to take a look in the tabbed notebook

12   at number 20, sir.  If you will flip to number 20.  Do

13   you see it, sticker number 20?

14          (Plaintiff's Exhibit Number 20 was received.)

15   A      Yes.

16   Q      Sir, I show you what has been marked for

17   identification as Pramco Exhibit Number 20.  Do you

18   recognize this document, sir?

19   A      Yes.

20   Q      What is this document?

21   A      It is a subpoena for appearance and for records.

22   Q      Now did there come a time, sir, on April 1st of

23   2004 when you carried this subpoena to a location in

24   Montgomery County, Maryland in an attempt to serve it,

25   sir?

19

117

1    A       Yes.

2    Q       Tell me where you went.

3    A       101 Monroe Street.  I do not recall the suite

4    number.

5    Q       What is located --

6            THE COURT:  What city, sir?

7            THE WITNESS:  Rockville, Maryland.

8            THE COURT:  All right.

9    BY MR. HIRSCH:

10   Q       What is located at 101 Monroe Street at the

11   location at which you went to attempt service of

12   process?

13   A       They are Montgomery County offices.

14   Q       Who specifically were you asked or instructed to

15   serve at that location?

16   A       I asked the gentleman in the office if Edith

17   Kissi was there.  He said yes, she's in a meeting

18   right here at this office.

19           At about the same time the door opened and she

20   stepped out and said did I hear my name?  I said yes,

21   if you're Edith Kissi, and she said yes.

22   Q       What did you then do, sir?

23   A       I handed her the paper.

24   Q       What did she then do after you handed her the

25   papers?

118

1    A      I stood there and waited about 20 seconds while
2    she flipped through it and looked at it.  At no time
3    did she ever say anything to me about it.
4    Q      And what did you then do, sir?
5    A      Turned around and left.
6    Q      Do you see the individual that you served that
7    summons to on Monroe Street in Rockville, Maryland on
8    April 1st of this year?
9    A      Yes.  She's sitting right here.
10   Q      Can you stand up and point to her for the
11   record?
12   A      Sitting here in the gray jacket with the white
13   shirt.
14          THE COURT:  All right.  Indicating that he is
15   pointing out Mrs. Kissi.
16          MR. HIRSCH:  I have no further questions.
17          THE COURT:  Let me just be clear.  What time of
18   day was it, sir?
19          THE WITNESS:  10:50 a.m.
20          THE COURT:  50?
21          THE WITNESS:  Yes.
22          THE COURT:  10:50 a.m.  All right.
23          MR. HIRSCH:  Your Honor, in response to the
24   Court's question, can I ask him one more question?
25          THE COURT:  Go ahead.

119

BY MR. HIRSCH:

1

2  Q      You have before you I believe Exhibit 21, which

3  had been taken out of the notebook.  I direct your

4  attention to the second page of number 21.  Can you

5  tell the Court whose signature appears on that

6  document, which is the return?

7        (Plaintiff's Exhibit Number 21 was received.)

8  A      Yes.  My name or the --

9  Q      Do you in the ordinary course of your business

10  will make it your business to file and to swear out

11  such a return, sir?

12  A      Yes.

13  Q      Were you cognizant when you swore such a return

14  out that you were doing it for the purposes of it

15  being filed in a court of law here?

16  A      Yes.

17        MR. HIRSCH:  Your Honor, I move the admission of

18  both 20 and 21.

19        THE COURT:  All right.  Received.

20        Cross-examination, Mr. Schwartz?

21        MR. SCHWARTZ:  No cross-examination.

22        THE COURT:  All right.  Thank you, sir.  You my

23  step down.

24        Do you want to call a witness on that point?

25        MR. SCHWARTZ:  Edith Kissi.

120

1          THE COURT:  All right.

2          MR. SCHWARTZ:  Or Edith Truvillion.

3          THE COURT:  You can remain in the courtroom,

4    sir.

5          THE CLERK:  Ma'am, please raise your right hand.

6                    EDITH RENEE TRUVILLION

7    a Defendant, having been previously duly sworn, was

8    examined and testified as follows:

9          THE CLERK:  Please have a seat.  Ma'am, please

10   speak directly into the microphone.  State your name

11   for the record.

12         THE WITNESS:  My name is Edith Renee Truvillion.

13   The last name is spelled T R U V I L L I O N.

14         THE CLERK:  Thank you.

15                    DIRECT EXAMINATION

16   BY MR. SCHWARTZ:

17   Q    Ms. Truvillion, where were you on Thursday, at

18   10:50?

19   A    In your office.

20   Q    Why were you in my office?

21   A    We were having a conference call with the other

22   attorneys on this case.

23   Q    Who was involved in the conference call?

24   A    My husband, David Kissi, Attorney Stanley

25   Alpert, Attorney Joseph Bruce, and Attorney William

121

1    Michaels, and yourself.

2    Q      What time did you arrive at my office?

3    A      We arrived at your office at around 10, close to

4     10 o'clock.

5    Q      How long were you at my office?

6    A      We were at your office for about three hours.

7    Q      What did we do?  What did you do at my office?

8     What were we discussing?

9    A      We were discussing settlement on this case.

10   Q      How long did the conference call go for?

11   A      The conference call was about an hour.

12   Q      Where did you go after -- what time did you

13    leave my office?

14   A      About 1, 1:30.

15   Q      Where did you go after that?

16   A      I was with David.  We went home.  You know, we

17    went home basically.

18   Q      Did you go to work at all that day?

19   A      No.  I wasn't at work at all that day.

20          MR. SCHWARTZ:  That's all I have.

21          THE COURT:  Mr. Hirsch.

22                   CROSS-EXAMINATION

23    BY MR. HIRSCH:

24   Q      Mrs. Kissi, do you work at 101 Monroe Street,

25    Suite 801 in Rockville, Maryland?

24

122

1    A     No, I do not.

2    Q     Are you an employee of Montgomery County,

3    Maryland?

4    A     I am an employee of Montgomery County.

5    Q     Were are you employed?  At what location do you

6    work at?

7    A     101 Monroe Street, thirteenth floor, Department

8    of Technology Services.

9          THE COURT:  Didn't you just say you didn't work

10   there:

11         THE WITNESS:  He said Suite, he said Suite 801.

12         THE COURT:  Okay.

13         THE WITNESS:  That would be the eight floor.

14   BY MR. HIRSCH:

15   Q     And isn't it a fact that your work sometimes

16   involves going from the thirteenth floor to the eighth

17   floor?

18   A     No.

19   Q     Is it your testimony that you never have to go

20   to the eighth floor ever?

21   A     No.  It's not my testimony that I never have to

22   go to the eighth floor.  It's a possibility I would

23   have to go to the eighth floor, but I haven't had to

24   go to the eight floor.

25   Q     You keep obviously no records of where you were

25

123

1    or track when you go to the eighth floor and when you

2    don't.  Isn't that a fact?

3    A      No.

4    Q      And isn't it also a fact that you have a

5    co-worker at Montgomery County at 101 Monroe Street in

6    Rockville, Maryland by the name of Jesse Neal?

7    A      No.  I don't know anyone named Jesse Neal.

8    Q      You never heard of anybody named Jesse Neal?

9    A      Never heard of anybody named Jesse Neal.

10         MR. SCHWARTZ:  Objection, Your Honor.

11         MR. HIRSCH:  I have no further questions.  She

12   can stand down, Your Honor.

13         THE COURT:  Well, I have some questions.  Have

14   you ever seen this man out here who served you with

15   process?

16         THE WITNESS:  No, I have not.

17         THE COURT:  He didn't serve you on another day?

18         THE WITNESS:  No, he did not.

19         THE COURT:  You are testifying under penalties

20   of perjury.  Do you understand that?

21         THE WITNESS:  Yes, I do understand that.

22         And no one knows me on the job by the name of

23   Edith Kissi either.  I use Truvillion.

24         THE COURT:  All right.  You may step down.

25         Do you want to call your witness, Mr. Hirsch?

124

1    Recall your witness.

2        Mr. Parsons, come up here.  Take the stand

3    again.  You are still under oath.

4        (Mr. Parsons took the stand.)

5        THE COURT:  I want you to take a good look at

6    this woman and tell me whether she is the woman you

7    served on April 1st.

8        THE WITNESS:  Yes, she is.

9        THE COURT:  Why are you certain?

10       THE WITNESS:  Because I stood there in front of

11   her for probably close to a minute and let her look at

12   the papers.

13       THE COURT:  Did the woman who you hand the

14   papers to keep the papers?

15       THE WITNESS:  Yes.

16       THE COURT:  Okay.  What floor were you on?

17       THE WITNESS:  Eighth floor.

18       THE COURT:  How long did you wait at the

19   meeting?

20       THE WITNESS:  Probably no more than 30 seconds

21   till the door opened, and I heard is somebody saying

22   my name, which is when I said yes, if you're Edith

23   Kissi, and she said yes.

24       THE COURT:  When you went to the door, to the

25   place where you say you ultimately encountered her,

125

1    was there somebody in the reception area that you

2    spoke to first?

3         THE WITNESS:  Yes.

4         THE COURT:  Do you remember who that person was?

5         THE WITNESS:  I do not know their name.

6         THE COURT:  What did you say to that person?

7         THE WITNESS:  I'm sorry?

8         THE COURT:  What did you say to that person?

9         THE WITNESS:  I asked if Edith Kissi was in.  He

10   said yes.

11        THE COURT:  He said yes?  It was a man?

12        THE WITNESS:  Yes.  He said yes.  He said she's

13   in a meeting right here.

14        THE COURT:  Okay.  And that was at the eighth

15   floor?

16        THE WITNESS:  Yes.

17        THE COURT:  Could you identify that person if he

18   were brought in as a witness?

19        THE WITNESS:  Most likely, yes.

20        THE COURT:  That would have been -- what day of

21   the week was the first?  It was a Thursday.

22        You say it was about 10:50 a.m.?

23        THE WITNESS:  Yes, sir.

24        THE COURT:  And you're certain of that?

25        THE WITNESS:  Yes.

126

1      THE COURT:  All right.  Any further questions?

2      MR. SCHWARTZ:  No.

3      THE COURT:  All right.  What I'm going to ask

4  you to do, Mr. Hirsch, is to arrange for this process

5  server to go back to that place and get an affidavit

6  from the individual that he saw that day, and we will

7  see about whether Mrs. Kissi has testified truthfully

8  or not.

9      MR. HIRSCH:  Well, Your Honor, after he steps

10  down and after he is excused, I have something to

11  represent to the Court.

12      THE COURT:  All right.  But in any event, I

13  would like an affidavit.  You go back and try and

14  locate this person that you saw that day and see if

15  that person confirms what you said now.

16      MR. HIRSCH:  Your Honor, I have one question to

17  ask him in light of the Court's questions.  Can I ask

18  him?

19      THE COURT:  All right.

20              DIRECT EXAMINATION

21  BY MR. HIRSCH:

22  Q    Sir, before you reported to 101 Monroe Street

23  with the summons, attempting to serve, had anybody

24  ever asked you to look for a Ms. Jesse Neal?

25  A    No.

133

1      THE COURT:  Mr. Schwartz, just tell me what you

2   know about this matter.

3      THE WITNESS:  We had set up a meeting and a

4   conference call with all her counsel to make a

5   settlement proposal to Mr. Hirsch.  That meeting was

6   set for about, for 9:30 on Thursday morning.  On

7   Wednesday night we called counsel.  We advised them --

8      The Kissies wanted to have a meeting in person,

9   but it was impracticable.  So we arranged to have a

10   conference call in my office.  It was set for 9:30.

11      I ran a little late.  The Kissies ran a little

12   late.  They arrived at my office at 10 o'clock or

13   thereabouts.

14      At about 10 o'clock, we placed a conference

15   call.  Mr. Alpert was on the call.  Mr. Bruce was on

16   the call, and Mr. Michaels, their appellate lawyer,

17   was on the call.  I was in my office and both the

18   Kissies were in my office.

19      The call started at 10 o'clock.  It went at

20   least an hour to an hour and a half.  It was a fairly

21   contentious matter because we wanted to hammer out a

22   settlement proposal.  We wanted to make sure the

23   Kissies were on board.

24      We probably finished the conference call about

25   12, 12:30.  At that point, actually the Kissies stayed

134

1    longer because I drafted a letter with five

2    signatures, with the Kissies' signatures and

3    signatures from all their counsel because we wanted to

4    assure Mr. Hirsch that it was a bona fide settlement

5    offer dealing with this real estate matter.

6        The Kissies stayed until I think really around

7    1:30, 2 o'clock.  The letter was typed out.  They

8    approved the final text.  They signed it.

9        I then faxed it to Mr. Michaels, Mr. Alpert, and

10   Mr. Bruce to get their signatures back on the letter,

11   and it was faxed to Mr. Hirsch I guess about 2:30,

12   something like that.

13       So they absolutely were in my office, both the

14   Kissies, from about 10 o'clock till about 2:30.

15       THE COURT:  All right.  Mr. Hirsch, do you wish

16   to inquire?

17       MR. HIRSCH:  Yes.  I have a few questions.

18                    CROSS-EXAMINATION

19   BY MR. HIRSCH:

20   Q    Mr. Schwartz, you told Mrs. Kissi prior to today

21   that she did not have to come to this hearing today.

22   Isn't that a fact, sir?

23   A    In fact, I advised her not to come.

24   Q    Exactly.  Isn't it a fact, sir, that Mrs. Kissi

25   has at no time prior to today told you that an attempt

31

135

1    had been made to serve process on her through a

2    subpoena for her to appear here today.  Isn't that a

3    fact?

4    A    Oh, she certainly did not advise me of that.  I

5    would have never told her not to come if I thought she

6    was subpoenaed.

7    Q    Isn't it a fact that she did not advise you

8    either that a subpoena had been delivered to a

9    co-worker or anyone in Montgomery County other than

10   herself?  Isn't that correct?

11   A    After Mrs. Kissi left my office, I have not

12   spoken to her until today.

13   Q    And you have not spoken to anyone in the

14   Montgomery County law department about the

15   circumstances of an attempt --

16   A    Absolutely.

17   Q    -- to serve a subpoena on Edith Truvillion

18   Kissi?  Isn't that correct, sir --

19   A    Absolutely.

20        MR. HIRSCH:  Your Honor, may I have the Court's

21   indulgence?  I just need to look up something.

22        (Pause.)

23        I have no further questions.

24        MR. SCHWARTZ:  May I step down?

25        THE COURT:  You may.

136

1      All right.  Do you want to argue further on your

2  motion to quash?

3      MR. SCHWARTZ:  Yes, Your Honor.  I believe that,

4  particularly with Mr. Hirsch's complicated proffer, I

5  feel there is no question --

6      I don't know if she was served, but I know she

7  was not served at 10:50 on April 1st.  That I know.

8      THE COURT:  You don't know if she was served?

9  She told me she was never served.

10      MR. SCHWARTZ:  No.  I am telling you about what

11  I have from my personal knowledge.  I don't know about

12  any other things with Montgomery County.  I know what

13  she testified to.  She testified she was not served.

14  From my personal knowledge, I know that she was not

15  served April 1st, 10:50.  That's what I can tell you.

16      MR. HIRSCH:  Your Honor, I would like to argue.

17  I think that in light of everything that you've heard

18  now, my proffer, the testimony of the two live

19  witnesses, and Mr. Schwartz's testimony, I think that

20  you should credit Mr. Parsons' testimony for two

21  reasons that appear to be.

22      Mr. Schwartz is now all of sudden retreating

23  from the position that she was never served.  Now he

24  has opened up the possibility that she might have been

25  served at some other time during the day.  That's

39

137

1    number one.

2        THE COURT:  I think he said he didn't know

3    whether she had been served.  Do you know?  Has she

4    talked to you about it at all, Mr. Schwartz?

5        MR. SCHWARTZ:  No.  I have not spoken to her

6    since she left my office.

7        THE COURT:  Is your testimony under oath that

8    she has given you no indication one way or another as

9    to whether she has been served at another time?

10       MR. SCHWARTZ:  She told me when she came here --

11   I called her on the phone when you instructed me --

12   that she had never been served.  That was what she

13   told me.

14       THE COURT:  Okay.  All right.

15       MR. HIRSCH:  Also, Your Honor, notice the

16   hesitation and the demeanor of Mrs. Kissi when she

17   tried to set up the alibi of the thirteenth floor.

18   Originally she said, originally she said that she is

19   never down on the eighth floor.  Then, when pressed

20   about it, Your Honor, she relented or backtracked on

21   that particular issue, and I would submit to the

22   Court, Your Honor, that that is a significant

23   concession in her testimony.

24       There was no hesitation whatsoever in Mr.

25   Parsons' testimony.  There is no motive.  There is no

40

138

1    motive to hide.  There is no animus here whatsoever.

2    This is an employee of a company that does this kind

3    of business.  They have nothing to lose, nothing to

4    gain, unlike Mrs. Kissi.

5           Lastly, Your Honor, what is the most strange

6    about this episode is that Mrs. Kissi, who is being

7    represented by Mr. Schwartz who has been very active

8    in this case and very vocal in this case, and

9    rightfully so in pursuit of his client's interest,

10   knows that there is something involving Montgomery

11   County and the possibility of defective service or

12   mistaken service, but Mr. Schwartz is not told about

13   anything.  Mr. Schwartz is completely in the dark

14   about it.

15          What I am suggesting is that -- I'm not pointing

16   a finger at Mr. Schwartz.  I think Mr. Schwartz is the

17   innocent party here.  I think Mr. Schwartz has been

18   duped by his own client who tried to manipulate this

19   issue through Montgomery County and the law department.

20          THE COURT:  All right.  Let's stop.  Let's stop.

21          MR. HIRSCH:  And Mr. Schwartz is in the dark.

22          THE COURT:  I am going to deny your motion to

23   quash because she is here, and we're going to keep her

24   here while she is here.

25          You are under court order to remain, Ms.

(41)

139

1    Truvillion.

2         I'm not going to make any ruling on the issue of

3    whether she received this because there may be perjury

4    involved here.  I don't know.

5         I want you, however, and I'm going to reserve on

6    this issue expressly, I want you, Mr. Hirsch, to get

7    an affidavit from this Jesse Neal and an affidavit

8    from the county attorney, and let's find out exactly

9    what their role is in this case.

10        If they decline to offer an affidavit to you,

11   tell them that I am prepared to sign an order to order

12   them to appear in open court to give testimony under

13   oath.

14        We will pursue this.  If there has been any

15   deceit by your client, Mr. Schwartz, we'll pick up on

16   it at another time.  Right now she is here for

17   purposes of this proceeding.  The motion to quash is

18   denied.

19        Is that understood?

20        MR. HIRSCH:  Your Honor, because the motion to

21   quash is denied, I would request -- I don't know if

22   she brought the subpoenaed documents.

23        THE COURT:  She may not have.  Assuming she

24   didn't, what else do you need?

25        MR. HIRSCH:  If she didn't, then I have nothing

140

1    for her.

2         THE COURT:  Don't you want to ask them where the

3    money came from?  I would be interested in knowing

4    where the 95,000 came from.

5         MR. HIRSCH:  There is a reason, Your Honor, why

6    I want to know it.  Obviously it's relevant.  I asked

7    Mr. Kissi, not once, at least three times during the

8    deposition.  He refused to give me the answer.

9         THE COURT:  All right.  Well, why don't you call

10   him under oath right now?  Let's see whether he is

11   going to answer or not.  That has some relevance.

12        Mr. Kissi, stand forward, please, be sworn, and

13   take the stand.  Did you bring some documents, Mr.

14   Kissi?

15        MR. KISSI:  No, sir.  I didn't bring any

16   documents.

17        THE COURT:  Was he subpoenaed duces tecum as

18   well?

19        MR. HIRSCH:  Yes, Your Honor.

20        THE COURT:  All right.  That's fine.

21        MR. HIRSCH:  He was served on Friday.

22        THE COURT:  It's his problem if he didn't bring

23   them.

24        Swear him, please.

25        THE CLERK:  Sir, please raise your right hand.

